JACOB STOVER *et al.*, Appellants, v. JACOB C. EYCLESHIMER, JOHN B. SHERMAN *et al.*, Respondents.

It seems to be settled that courts of equity will support assignments of contingent interests and expectations, and of things which have no present actual existence, but rest in possibility only, provided the agreements are fairly entered into, and it would not be against public policy to uphold them.

Where an assignment of an expectancy was made to secure an existing debt, it was held that the instrument was supported by a valid consideration.

BOCKES, J.  This is an appeal from the judgment of the General Term of the Supreme Court, affirming the judgment entered at Special Term on the report of a referee.

The action was in partition.  The decree declared the rights of the parties, directed a sale of the premises, and also distribution of the avails.  The decree was satisfactory in all respects, except as to the share of John L. D. Eycleshimer, which share was a subject of controversy between the defendants Jacob C. Eycleshimer and John B. Sherman. The former claimed such share as a judgment-creditor of J. L. D. E., under attachment proceedings; the latter claimed as purchaser.  By the judgment of the Supreme Court it was awarded to Mr. Sherman, the purchaser.

The facts on which these parties rested their claims were as follows: John P. Eycleshimer died intestate, June 10th, 1861, seized of the premises described in the complaint, leaving J. L. D. E. entitled as heir at law to share in his estate. Prior thereto, and in September, 1858, J. L. D. E. executed and delivered to Caroline M. Sherman, an irrevocable power of attorney, coupled with an interest to ask, demand, sue for, recover and receive, all such interest, estate, property and effects, real and personal, as he then had, or at any time thereafter should have, as heir at law, devisee, legatee or next of kin of his father J. P. E., with power to sell, dispose of and convey the same, and apply the proceeds to the payment

of a debt of $1,573 and interest, which said J. L. D. E. then owed to her. The instrument, under seal, was acknowledged March 2, 1859, and was recorded August 24, 1861, in Rensselaer county, in which county the premises were situated. On the 12th day of September, 1861, Caroline M. Sherman executed and delivered to the respondent, John B. Sherman, pursuant to said power of attorney, a conveyance of all the interest of said J. L. D. E. in his father's estate, and also all her interest, legal and equitable, therein. By virtue of these instruments, the respondent Sherman claimed the share of J. L. D. E. in his father's estate, which interest was insufficient to satisfy the debt of $1,573, specified in the power of attorney.

The claim of the appellant to the interest of J. L. D. E., arose as follows: On the 22d October, 1861, he recovered a judgment in the Supreme Court against J. L. D. E. for $1,021.61, in an action commenced August 6th, 1861, in which action and on which day a warrant of attachment was issued to the sheriff of Rensselaer county, who, on the same day, attached the interest of J. L. D. E. in his father's estate. Notice of pendency of the action was filed August 14, 1861.

The question then is, who had the better right, the appellant, who claimed as an attaching judgment creditor, or the respondent, who claimed as an equitable purchaser or assignee, holding the position of Caroline M. Sherman, whose rights he had acquired.

In point of time, the latter had the priority, for at the decease of the intestate, June 10, 1861, Caroline M. Sherman held the instrument which was the basis of the respondent's right. The warrant of attachment was not levied until August 6th thereafter.

The question is, therefore, whether the instrument executed to Caroline M. Sherman took effect on the decease of the intestate, either as a legal or equitable transfer of the estate which descended to the heir at law.

It is undoubtedly true that J. L. D. Eycleshimer had no vested interest in his father's estate at the time he executed

the instrument, only a bare possibility, which, of course, was not the subject of a grant, nor did the instrument contain a warrant which could be made to operate as an estoppel; and it may, I think, be assumed in this case, that the instrument did not effect an absolute transfer of the legal title, and yet uphold the respondent's claim. If it was such an instrument as a court of equity would enforce on the decease of the ancestor, it was effectual for the respondent's purpose. That it was such, seems to me undeniable. The plain object which the parties had in view was to transfer the expectancy of an heir as a security for the payment of a just debt. In Fonblanque's Equity (218) it is said, that although a grant of a possibility is not good in law, yet it may be assigned; and Judge Story lays it down (§ 1040) that even the naked possibility or expectancy of an heir to his ancestor's estate may become the subject of a contract of sale or settlement, and in such case, if made *bona fide* for valuable consideration, it will be enforced in equity after the death of the ancestor, not indeed as a trust attaching to the estate, but as a right of contract. So too it is laid down in Spence's Equitable Jurisdiction, that an expectancy or contingent interest may be sold, and the court of chancery, after the event has happened, will enforce the sale (vol. 2, 865). It is true, Judge COWEN remarks, in *Munsell* v. *Lewis* (4 Hill, 642), that he was of the opinion that a simple expectancy, in which the assignor had no interest and which is unpurchaseable, can neither be assigned, nor would a contract for future assignment be valid; and so Judge WILLARD has said in General Term, that a bare possibility of an uncertain interest is not assignable. (Will. Eq. Jur. 461.) These remarks, however, without qualification, can hardly be deemed sound law at the present day, for in *Field* v. *The Mayor, etc.* (6 N. Y. 179), it was held that an assignment for a valuable consideration of demands, having at the time no actual existence, but which rest in expectancy merely, is valid in equity as an agreement, and takes effect as an assignment when the demands intended to be assigned are subsequently brought into existence. The learned judge who gave expression to the

views of this court, in that case, says : "there was indeed no
present, actual potential existence of the thing to which the
assignment or grant related, and therefore it could not and
did not operate *eo instanti* to pass the claim which was
expected thereafter to accrue to Bell against the corporation ;
but it did, nevertheless, create an equity which would seize
upon those claims as they should arise, and would continue
so to operate until the object of the agreement was accom-
plished.   On this principle an assignment of freight to be
earned in future will be upheld and enforced against the
party from whom it becomes due ;" and he adds, "whatever
doubts may have existed heretofore on this subject, the better
opinion I think now is, that courts of equity will support
assignments, not only of choses in action, but of contingent
interests and expectations, and of things which have no
present actual existence, but rest in possibility only, pro-
vided the agreements are fairly entered into, and it would
not be against public policy to uphold them.   Authorities
may be found which seem to incline the other way, but they
will be found, on examination, to have been overruled or to
have turned upon the question of public policy."   This deci-
sion by this court seems directly in point, and is conclusive
of the case before us on this appeal.   It may be well, per-
haps, here to refer to the decision in *Milliman* v. *Neher* (20
Barb. 37), and the cases there cited.   It was there held that
a chattel mortgage could only operate upon property in
actual existence at the time of its execution.   In that case
the question arose in regard to the *legal title* to the property,
and the decision should be construed with reference to that
fact.   Otherwise, the case is in conflict with numerous later
decisions, where it has been held that such mortgage would
be enforced in equity whenever the property should be
obtained or should be brought into existence.

The instrument under which the respondent claims was
evidently intended to be, and by its terms was, more than a
mere power of attorney.   It was intended to vest in Miss
Sherman an interest in the property as a security for the
payment of J. L. D. Eycleshimer's debt to her.   With other

rights conferred on her thereby, she was to receive the proceeds and avails of the property " and of all my interest and estate therein, *and all my estate, property and effects aforesaid*, and apply the same respectively to the payment and discharge of the " debt which he therein declared he justly owed her. Now here was a clear appropriation by J. L. D. E. of his expectation as heir at law in his father's estate, in effect a transfer thereof as security, equivalent in all essentials to a mortgage in exact and legal phrase.

The instrument could undoubtedly have been enforced against J. L. D. E., on his father's decease, according to its plain import and purpose. He could not have resisted its just effect as a claim or lien on the property. If not, it follows of course that his creditor could not acquire a superior right either by attachment or other proceeding. A creditor could only obtain his position and rights.

It is objected that the consideration of the instrument was a precedent debt, and consequently that Miss Sherman could not have insisted on her equity against the claims of an attaching and judgment creditor.

It is not suggested that the debt was not a just one, nor is it intimated that the instrument was not given in entire good faith. Regarding the instrument as an equitable security for the satisfaction of a just debt, the consideration was abundant and *bona fide*. This precise point was considered by Judge SELDEN in *Seymour* v. *Wilson* (19 N. Y. 417, 421). The learned judge there shows that a transfer directly to a creditor in payment of or as security for an honest debt, in the absence of meditated fraud, is good against the claims of both existing and future creditors of the vendor. He says : " It is not necessary in such a case, that the vendee, in order to protect himself from a claim by the other creditors, should show any new consideration paid." He adds : " There is no doubt that the debt paid *or secured* by the transfer must, in such case, be regarded as a ' valuable consideration' within the section which saves the rights of *bona fide* purchasers ; so that if the creditor acts in good faith, and for the mere purpose of obtaining satisfaction of

his own debt in accepting the transfer, he will acquire a valid title. There being no equity prior to his own to be over-. come, the necessity which calls for proof of a new consideration, in other cases, does not exist." The objection that the instrument is not supported by a valid consideration, is not well taken.

The case then comes to this: that Miss Sherman held, as security for the payment and satisfaction of a debt due her, a valid equitable claim on the estate of J. L. D. Eycleshimer, which came to him by descent, on the decease of his father intestate, June 10, 1861, which claim then became a vested right in her, capable of equitable enforcement; and that the respondent on this appeal acquired her position and succeeded to her rights. The appellant's proceedings and judgment were subsequent thereto, the warrant of attachment having been levied on the 6th August, 1861, and the judgment entered in October following. The claim of the respondent to the fund in controversy was therefore paramount to that of the appellant, and the judgment of the Supreme Court to that effect should be affirmed.

All concur.

Affirmed, with costs.