(No. 21902.—

DANIEL W. GURNETT et al. Plaintiffs in Error, vs. THE
MUTUAL LIFE INSURANCE COMPANY OF NEW YORK
et al. Defendants in Error.

*Opinion filed June 15, 1934.*

TAYLOR, MILLER, BUSCH & BOYDEN, (FRANCIS X. BUSCH, JOHN S. MILLER, JAMES J. MAGNER, BERNARD K. SHAPIRO, and WILLIAM KLEVS, of counsel,) for plaintiffs in error.

WALTER W. ROSS, RICHARD S. TUTHILL, and ROBERT D. ROSS, guardian *ad litem*, (WINSTON, STRAWN & SHAW, JOHN C. SLADE, GEORGE T. EVANS, and POPPENHUSEN, JOHNSTON, THOMPSON & COLE, of counsel,) for defendants in error.

Mr. JUSTICE DEYOUNG delivered the opinion of the court:

Daniel W. Gurnett and four other persons, partners, doing business under the firm name and style of Gurnett & Co., filed their amended and supplemental bill of complaint in the circuit court of Cook county against the Mutual Life Insurance Company of New York, the Penn Mutual Life Insurance Company, the Central Republic Bank and Trust Company, as successor trustee under a life insurance trust agreement, the executors of the last will and testament of Knowlton L. Ames, deceased, and his heirs-at-law. The relief prayed for was: (1) to have the trust agreement and the amendments thereto entered into by Knowlton L. Ames and the Central Trust Company of Illinois, as trustee, declared void; (2) to enjoin the two named insurance companies from paying to the trustee the proceeds of certain policies they had issued; (3) to restrain the trustee from disposing of the proceeds of other policies paid to it, and (4) to order the trustee to hold the proceeds of the several policies under a resulting trust in favor of the estate of Ames and to pay such proceeds to the executors of his will. Motions to dismiss the bill were made by all the defendants, and after an extended hearing upon these motions the chancellor found that the agreement and amendments thereto constituted a valid trust agreement and that the amended and supplemental bill was without equity. The complainants elected to abide by their bill and the court entered a decree dismissing it for the want of equity. Upon appeal, the Appellate Court for the First District affirmed the decree. The cause is here upon a writ of *certiorari* for a further review.

The complainants, in their amended and supplemental bill, alleged that they were stock brokers engaged in business in Boston, Massachusetts; that under various agreements, relative to the purchase and sale of stocks and other securities, Ames became indebted to them in the sum of

$324,361.83, with interest thereon; that although they had instituted legal proceedings against Ames in the superior court of Cook county for the recovery of this sum, with interest, the suit was undisposed of and pending when he died on December 23, 1931; that his estate, in the process of administration in the probate court of Cook county, was insufficient to pay the claims of creditors; that the proceeds of certain life insurance policies subject to a life insurance trust agreement dated December 2, 1930, and two amendments thereto, had been paid to the trustee designated therein but that a sum in excess of $300,000 payable under the policies issued by the Mutual Life Insurance Company of New York and the Penn Mutual Life Insurance Company and also subject to the trust had not been paid to the trustee; that Ames had not assigned the policies to the trustee; that prior to his death Ames treated the policies as his sole property and that he borrowed money from insurance companies upon some of the policies after December 2, 1930. It is further alleged that the agreement and amendments thereto did not conform to the legal requirements for the disposition of property *inter vivos,* because there was no disposition by Ames during his lifetime of any interests in the life insurance policies to the trustee; that there was no actual *corpus* of the trust while Ames lived, as the result of which the trust failed, and that the proceeds of the policies rightfully belong to the executors and should be impressed with a resulting trust in favor of the estate. It is charged that the executors, the Central Republic Bank and Trust Company and John Dawes Ames, are disqualified from bringing the suit because of interest as the trustee and a beneficiary, respectively, of the trust, and that owing to their failure to institute legal proceedings to have the trust declared void, the complainants have filed their amended and supplemental bill, for and in the place of the executors, and on behalf of claimants, creditors, the legatees and heirs of the decedent as well as in their own

behalf. Fraud is not alleged, nor are there any allegations that the transaction contravenes any statute or the public policy of the State or any provision of the various contracts of insurance.

The trust agreement, including a schedule of the policies initially deposited with the trustee thereunder, and amendments dated April 2, 1931, and June 25, 1931, respectively, were attached to and made a part of the bill. The schedule discloses that beginning in 1906 and continuing through 1927, Ames acquired thirty-three policies of life insurance from ten different companies for a total exceeding one million dollars. By the trust agreement Ames is designated as the assured, and the Central Trust Company of Illinois, a corporation authorized to accept and execute trusts, as the trustee. The agreement sets forth that Ames deposited the policies with the trustee and agreed to make the trustee the beneficiary of all the policies. Ames thereafter caused the companies, including the two made defendants to this suit, to change the beneficiaries in conformity with the provisions of the trust agreement. Where the trustee previously had not been named as the beneficiary, the companies noted the change on the face of the policies. The agreement further provided that Ames should continue to pay all premiums, assessments and other charges required to keep the policies in force, and that he retain the power to exercise any right, option, or privilege given to him by any of the policies, including the right to change the beneficiary, to borrow money in accordance with the respective policy provisions, to use any of the policies as security for any purpose whatsoever, to receive any dividends, earnings or other payments on the policies, and to surrender any policy for its cash surrender value. In addition to the powers reserved with respect to the policies, the agreement provided that Ames should have the right to terminate it in whole or in part, or to modify or amend it. The latter power was twice exercised. The trustee agreed to hold the

policies until Ames should in writing otherwise request or direct. If so requested or directed, and upon the payment to it of reasonable compensation for its past services, the trustee was required to deliver the policies demanded. The agreement imposed no other duties upon the trustee during the lifetime of Ames. The trustee agreed, upon his death, to collect the policies and to administer and dispose of the proceeds in conformity with the detailed directions prescribed in the trust agreement. For the performance of these duties after Ames' death, the agreement provided that the trustee would be entitled to compensation.

The plaintiffs in error contend that the agreement of December 2, 1930, did not create a valid trust because the settlor neither relinquished the power to change the beneficiary named in the policies nor assigned any of the policies to the trustee. To support the decree sustaining the validity of the trust, the defendants in error maintain, first, that the trust agreement passed property rights or interests of the settlor in the policies to the trustee during the lifetime of the settlor and, second, that by the execution of the agreement and the nomination of the trustee as the beneficiary of the policies, the settlor manifested his intention to transfer the title to, as well as the physical possession of, the policies to the trustee.

A trust is an obligation arising out of a confidence reposed in a person, for the benefit of another, to apply property faithfully and according to such confidence. (Lewin on Trusts, (13th ed.) p. 12; 1 Perry on Trusts, (7th ed.) sec. 2; *Marble* v. *Marble,* 304 Ill. 229). It may be created in any property, real or personal, legal or equitable, which is in existence, and which in the eye of a court of equity, is of value. (1 Perry on Trusts, (7th ed.) secs. 67, 68; *Burke* v. *Burke,* 259 Ill. 262; *Crum* v. *Sawyer,* 132 id. 443). Choses in action, contingent interests and expectancies may be assigned and a valid trust created in them. Although not assignable at law, they may be transferred, so

as to be binding in equity, by a contract made in good faith and for a valuable consideration. (2 Story on Eq. Jur. (13th ed.) sec. 1040*b*; 1 Perry on Trusts, (7th ed.) secs. 67, 68; *Jarvis* v. *Binkley,* 206 Ill. 541; *Hudnall* v. *Ham,* 183 id. 486; *Crum* v. *Sawyer, supra; Kerr* v. *Crane,* 212 Mass. 224). To constitute a valid trust of personal property there must be a declaration by a person competent to create it, a trustee, designated beneficiaries, a certain and ascertained object, a definite fund or subject matter, and its delivery or assignment to the trustee. Godefroi on Trusts, (5th ed.) p. 7; *Cruwys* v. *Colman,* 9 Ves. 319; *Brown* v. *Spohr,* 180 N. Y. 201; *Johnson* v. *Scott,* 137 N. Y. Supp. 243; *Gough* v. *Satterlee,* 52 id. 492.

A life insurance policy is property and may constitute the subject matter of a trust. (*Fortescue* v. *Barnett,* 3 Mylne & Keen, 36; *Otis* v. *Beckwith,* 49 Ill. 121; *Hirsh* v. *Auer,* 146 N. Y. 13; *Lauterbach* v. *New York Investment Co.* 117 N. Y. Supp. 152; *Bose* v. *Meury,* 112 N. J. Eq. 62; *Kendrick* v. *Ray,* 173 Mass. 305; *Coyne* v. *Supreme Conclave,* 106 Md. 54). The designated beneficiary of the policy may, by the provisions of a collateral trust agreement, be named as the trustee. (Vance on Insurance, (2d ed.) p. 606). When the beneficiary promises the insured to pay either the whole or a portion of the proceeds of the policy to a third person, the proceeds will be impressed with a trust to the extent of the promise made. *Hirsh* v. *Auer, supra; Bose* v. *Meury, supra; Coyne* v. *Supreme Conclave, supra.*

Ames, the creator of the trust assailed, made his insurance policies payable to a trustee and contemporaneously executed a trust agreement providing for the administration and disposition of the proceeds of the policies. The trustee promised to perform the duties of administering the trust according to the provisions of the agreement, and the policies were placed in its possession. The policies were contracts between the insured and the insurers for

the payment of stipulated sums by the latter to the trustee as the nominee of the insured upon the happening of a certain contingency, namely, the death of Ames. (1 Biddle on Insurance, p. 5; 1 Joyce on Insurance, (2d ed.) sec. 7). The premiums paid by Ames constituted the consideration for the promises made by the insurers. Their obligations to pay and the right of the trustee to receive the proceeds of the policies, upon the happening of the contingency specified, were determined when the companies noted upon the face of the policies the exercise, by the insured, of his right or privilege to change the beneficiaries. The date of the death of the insured merely fixed the time when the obligation of the insurers to pay and the right of the beneficiary to receive the proceeds of the policies became enforcible. (*Frick* v. *Lewellyn,* 298 Fed. 803). The trust agreement and the change of beneficiaries, however, became effective during the lifetime of the settlor. The continuing right to receive the proceeds of an insurance policy is not impaired by the unexercised right or privilege of the insured to designate another beneficiary. (Richards on Insurance, (4th ed.) p. 565; *Tyler* v. *Treasurer,* 226 Mass. 306). The designation of a beneficiary in a policy of life insurance creates an inchoate gift of the proceeds of the policy, which, if not revoked by the insured in his lifetime, vests in the beneficiary at the time of the former's death. (*Travelers' Ins. Co. of Hartford* v. *Fancher,* 26 Pac. (2d) (Cal.) 482). A policy of life insurance is not deemed an asset of the estate of the insured unless it is made payable to him, his executors or administrators. The mere fact that the insured may change the beneficiary does not make the policy or its proceeds a part of his estate. Neither the policies nor their proceeds constituted a part of the estate of Knowlton L. Ames, deceased. Since his death the trust agreement is merely evidence of the trustee's contract under which it must collect the policies and hold the proceeds for the purposes of the trust.

A trust in the proceeds of an insurance policy was enforced in *Otis* v. *Beckwith,* 49 Ill. 121, a case in which the policy was not delivered to the trustee and the existence of an assignment was first discovered following the death of the insured. Edward Sacket requested Thomas S. Beckwith to act as trustee of the proceeds of a life insurance policy for the benefit of Sacket's three sons by his first marriage. Upon the written acceptance by Beckwith of the trusteeship, Sacket executed an assignment of the policy to him and attached the assignment to the policy. The assignment was made in conformity with the provisions of the contract of insurance and was noted upon the insurer's books. Sacket did not, however, deliver either the policy or the assignment to the trustee. After Sacket's death, the trustee and the administrator of his estate each claimed the proceeds of the policy. In a bill filed for the purpose of compelling the administrator to surrender the policy and to pay the proceeds to the trustee, it was alleged that the intention of Sacket was to vest the title to the policy in Beckwith as trustee for his three sons, and that Sacket, from the time of the assignment until his death four years later, considered it as belonging absolutely to Beckwith, as such trustee. Sacket's widow contended that her husband retained possession and control of the policy and the assignment during his lifetime so that the title to the policy should not vest in the trustee absolutely, and that he might make a different disposition of it if he so desired. In her answer, she averred that he failed to effect any legal transfer and that the title to the policy, regardless of her husband's intention, never vested in the trustee. This court held that since the policy was actually assigned and the assignment accepted in writing and noted on the books of the insurer, these acts were equivalent to an actual delivery of the assignment to the trustee. In affirming the decree of the trial court directing the administrator to pay the proceeds of the policy to the trustee, this court emphasized the inten-

tion of Sacket and observed that he created a fund for his children; that he did all within his power to confer upon the trustee the necessary authority to receive the fund; that, by the payment of premiums, he kept the policy in force, and that he never manifested any repentance of his act. The intention of Ames, in the present case, is equally clear for he created the fund, continued to pay premiums on the policies and did not revoke the trust. It follows that upon his death the obligations of the insurance companies were owing to the trustee.

The case of *Bose* v. *Meury,* 112 N. J. Eq. 62, is similar to the case at bar. Arnold J. Meury named a trust company as trustee of the proceeds of all his life insurance policies. A trust agreement provided for the payment of the income from the proceeds of the policies to his wife, with the remainder to his children. Meury reserved the right to add or to withdraw policies and to revoke the trust. He exercised that power by withdrawing two policies aggregating $25,000 and pledging them with Edward Bose as security for a loan. The beneficiary, however, was not changed. Upon Meury's death, the proceeds of these two policies were paid to Bose who deposited the excess above his claim in court upon an interpleader bill. The estate was insolvent and the trustee, the widow as administratrix, and creditors claimed the surplus. It was contended that, by the reserved right to withdraw policies and to revoke the trust, control of the subject matter was retained and that the trust was testamentary. In denying these contentions, the court said: "Whatever merit there may be to the points were the *res* in trust the property of the trustor, they are beside the question where, as here, the *res* is the proceeds of insurance on the life of the trustor which never were his property. The proceeds are the fulfillment of promises by the insurance company to the Montclair Trust Company, trustee, to pay the stipulated sums, upon the death of the insured. The insured paid the consideration for the prom-

ises and he had the right, under the terms of the policies, to change the promises at will, but when the day came—the insured's death—the obligations of the insurance company were due to the Montclair Trust Company, trustee. Its source of title was the promise in the policies, not the trust agreement. The trust agreement is no more than a declaration of trust by the trustee that it would hold the proceeds of the policies for the benefit of the insured's wife and children, and whether it had physical possession of the policies or whether there was a stripping of interest by the 'donor,' or that the trust deed was testamentary, is wholly immaterial."

Likewise, in the case of *Hirsh* v. *Auer,* 146 N. Y. 13, it appeared that the insured at any time could have changed the beneficiary of his certificate of insurance. In impressing the proceeds of the policy with the trust created by an agreement between the insured and the beneficiary, the court said: "The statutes of this State do not define the objects for which trusts in personal property may be created, and if they are not against public policy and do not contravene any existing provisions of law they will be enforced. The fact that the trust dealt with a contingent interest of the insured in the certificate of insurance is of no moment; that interest became vested at the death of the insured, and the beneficiary having collected the insurance money, the trust under the agreement creating and acknowledging it, attached to the fund. A trust of this character is not to be distinguished from assignments of contingent interests which courts of equity recognize as valid.—*Field* v. *Mayor of New York,* 6 N. Y. 179; *Stover* v. *Eycleshimer,* 3 Keyes, 620."

The reservation of the power to revoke an entire trust does not invalidate the agreement presently creating it or render it testamentary. (*People* v. *Northern Trust Co.* 289 Ill. 475; *Kelly* v. *Parker,* 181 id. 49; *Mayer* v. *Tucker,* 102 N. J. Eq. 524; *Dolan's Estate,* 279 Pa. 582). The plaintiffs in error concede the validity of the provision re-

serving power to the settlor to terminate the trust agreement in whole or in part. Naming new beneficiaries in one or more of the policies would have produced precisely the same effect as the termination of the trust with respect to such policies. The power to designate another beneficiary in an insurance policy is a privilege personal to the insured. The powers and privileges reserved do not affect the obligations of the insurers to pay the proceeds of the policies to the trustee upon the death of the insured.

It is not alleged in the bill of complaint that any insurance contract subject to the trust agreement required an assignment to transfer the policy. If such a requirement was prescribed, it was for the benefit of the insurance company which alone could complain that it had not been observed. The insurers did not challenge the validity of the transaction attacked by the plaintiffs in error. All the insurance companies recognized the title of the trustee either by the payment of the policies prior to the commencement of this suit or by motions to dismiss the amended and supplemental bill. The plaintiffs in error were neither parties to the trust agreement nor to any of the contracts of insurance and they claim no lien on any of the policies. Moreover, the intention of the insured with respect to the payment of a policy was as effectually manifested by the designation of a new beneficiary as by the assignment of the policy. *Delaney* v. *Delaney,* 175 Ill. 187; *Potter* v. *Northwestern Mutual Life Ins. Co.* 247 N. W. (Iowa) 669.

The allegations of the amended and supplemental bill disclose that Ames could have named his wife and children the direct beneficiaries of the policies in which they were not so designated. His intention to provide financial security for his family through the medium of a life insurance trust is clear. The contentions urged by the plaintiffs in error do not warrant the frustration, by the interposition of a court of equity, of that intention.

The judgment of the Appellate Court is affirmed.

*Judgment affirmed.*