ALBERT D. LASKER, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 108913.   Promulgated December 8, 1942.

*Albert L. Hopkins, Esq.*, and *Peter L. Wentz, Esq.*, for the petitioner.

*F. F. Korell, Esq.*, and *David Altman, Esq.*, for the respondent.

### OPINION.

LEECH, *Judge:* Respondent determined a deficiency in gift tax of petitioner for the year 1938 in the sum of $51,123.66. By amended answer he asks an increase in the deficiency. The issues are (1) whether the payment of $375,000, made by petitioner in 1938 to his wife, was a gift or a transfer for a full and adequate consideration in money or money's worth within the purview of section 503 of the Revenue Act of 1932,[1] and (2) whether transfers of property by petitioner in 1932 to several trusts created by his wife for the benefit of their children constituted completed gifts as of that time or as of the year 1935, when the several trusts were made irrevocable. Revenue Act of 1932, sec. 501 (c).[2]

---

[1] SEC. 503. TRANSFER FOR LESS THAN ADEQUATE AND FULL CONSIDERATION. Where property is transferred for less than an adequate and full consideration in money or money's worth, then the amount by which the value of the property exceeded the value of the consideration shall, for the purpose of the tax imposed by this title, be deemed a gift, and shall be included in computing the amount of gifts made during the calendar year.

[2] SEC. 501. IMPOSITION OF TAX.

\*       \*       \*       \*       \*       \*

(c) The tax shall not apply to a transfer of property in trust where the power to revest in the donor title to such property is vested in the donor, either alone or in conjunction with any person not having a substantial adverse interest in the disposition of such property or the income therefrom, but the relinquishment or termination of such power (other than by the donor's death) shall be considered to be a transfer by the donor by gift of the property subject to such power, and any payment of the income therefrom to a beneficiary other than the donor shall be considered to be a transfer by the donor of such income by gift.

We find the facts as stipulated. Petitioner is now a resident of New York City. His return for 1938 was filed with the collector of internal revenue for the first district of Illinois. On October 14, 1938, the petitioner and Doris Kenyon Sills, in contemplation of marriage, jointly executed in writing at Chicago, Illinois, an antenuptial contract with respect to property rights, which contract provided that it should be construed and governed by the laws of Illinois. At this time petitioner was 58 years of age and a widower, his wife, Flora W. Lasker, having died December 19, 1936. He had three children, all of whom were of age. His net worth, on October 14, 1938, was in excess of $10,000,000. Doris Kenyon Sills on that date was a widow, 40 years of age, with one child, a son 11 years of age. Her net worth on that date was negligible.

By the contract above referred to, petitioner agreed that if, upon his death, Doris Kenyon Sills "should be living with him as his wife" he would leave a will providing that she should have out of his estate as her property, any home or homes which he might thereafter acquire and own at his death, together with their furnishings, and the sum of $200,000 to be allowed as a debt against his estate. The will was to provide further that his estate, after excluding the home or homes above mentioned, together with his present homes and their furnishings, Mill Road Farm and Golf Course, and after deducting all debts and charges excepting the $200,000 charge above mentioned, and deducting all taxes except state inheritance and succession taxes, should be valued, and property equal to one-half thereof, less $200,000, was to be set aside and placed in trust for Doris Kenyon Sills. She was to have the income of this trust for life, with remainder to her issue, which was to include not only such children as might be born of the contemplated marriage with petitioner, but also her son by her former marriage. It was further provided that should petitioner die without leaving a will the contract in question would define the rights of Doris Kenyon Sills in his estate and should be binding upon his personal representatives. Petitioner further, by the contract, released any rights which he might otherwise have as a result of the contemplated marriage in the property of Doris Kenyon Sills, including property thereafter acquired by her.

By the terms of the contract Doris Kenyon Sills agreed to accept the provisions made by petitioner thereunder as in full discharge and satisfaction of all her rights of dower, survivorship, and inheritance, excepting statutory homestead and any statutory award for support of minor children, as well as in satisfaction of any right which might accrue to her under any community property law, provided, however, that should the parties in the future become domiciled in a community property state only such income as should be paid petitioner

for services rendered by him would be considered community property and that such income might be used for living expenses.

Paragraph 5 of the contract provides:

It is agreed that should the parties hereto cease to live together as husband and wife or become legally separated or divorced, then, in any of such events, this agreement shall thereupon cease and determine and shall be henceforth null and void and neither the parties hereto nor their Executors or administrators shall be bound hereby, and henceforth the same rights shall obtain between the parties and in and to their property as if this agreement had never been entered into. It is further agreed that if the said contemplated marriage does not take place, this Agreement shall have no effect.

On October 28, 1938, petitioner and Doris Kenyon Sills were married. On December 21, 1938, petitioner and his wife, Doris Kenyon Lasker, entered into a contract reciting that in consideration of payment of the sum of $375,000 to the latter by petitioner, the contract theretofore entered into between them on October 14, 1938 "shall be and the same is hereby cancelled and terminated and all rights and obligations thereunder are hereby released and discharged" and that:

3. Said DORIS KENYON LASKER hereby agrees to and does hereby grant, bargain, sell, convey, release, relinquish, waive, quitclaim, assign and convey to ALBERT D. LASKER all rights, title and interest of every kind and nature whatsoever which she, as the wife or surviving spouse or heir of said ALBERT D. LASKER, under the laws of the State of Illinois or any other state or jurisdiction, may have acquired or which she may hereafter acquire during the lifetime of ALBERT D. LASKER or at his death, by reason of the marriage that now exists between the parties hereto, in and to all the property, both real and personal, of every kind and nature whatsoever, which now is or hereafter during the lifetime or at the death of said ALBERT D. LASKER may be owned by said ALBERT D. LASKER, excepting, however, statutory homestead and statutory award for widow's support or for support of minor children.

4. In consideration of the agreements, releases, conveyances and relinquishments of said DORIS KENYON LASKER in this indenture set forth or provided for, said ALBERT D. LASKER agrees to pay said DORIS KENYON LASKER the sum of Three Hundred Seventy-Five Thousand Dollars ($375,000).

5. The parties hereto agree that this agreement is not intended to be and shall not be construed to be a separation agreement or an agreement on the part of said ALBERT D. LASKER providing for the support and maintenance of or by way of alimony to said DORIS KENYON LASKER or as a release of the obligation of said ALBERT D. LASKER to support said DORIS KENYON LASKER.

In the negotiations leading up to and in the execution of the foregoing contract petitioner and Doris Kenyon Lasker were each represented by personal counsel. On the same date the contract was executed, petitioner made payment of the $375,000 there specified and Doris Kenyon Lasker executed quitclaim deeds to petitioner covering all real property owned by him.

On June 8, 1939, the District Court of the First Judicial District of the State of Nevada entered its decree awarding an absolute divorce

to Doris Kenyon Lasker. No provision was made in the decree for support, maintenance, or expenses. It was there stated that the written agreements between the parties settling such rights were approved.

Doris Kenyon Lasker filed a donee's information return for 1938 in which she reported the aforesaid $375,000 paid to her by petitioner, as a gift received from him. Petitioner, on July 20, 1939, filed a gift tax return for 1938 reciting that it was filed at the request of the collector. He there reported the $375,000 payment but stated that it was not a gift, but was a payment for cancellation of the antenuptial agreement and the release by Doris Kenyon Lasker of all interest in his property.

On December 7, 1931, petitioner's then wife, Flora W. Lasker, executed three trust indentures creating, in each instance, a trust for one of their three children. These trusts were designated as the "Mary Insurance Trust," the "Edward Insurance Trust," and the "Frances Insurance Trust" respectively. Their terms and conditions were identical, and to each trust the grantor conveyed shares of stock of substantial value.

The trustees of each of the aforementioned trusts were Ralph V. Sollitt, Albert L. Hopkins, and the grantor, Flora W. Lasker. The trusts were to terminate upon the death of the last survivor of Flora W. Lasker, Albert D. Lasker, the petitioner herein, and the three beneficiaries. The trustees were empowered to purchase insurance under which they were to be the beneficiaries upon the lives of any persons in whom the beneficiaries had an insurable interest. The premiums upon such insurance were to be paid from the income of the trust estate. Any income remaining in each year after payment of the premiums might, in the discretion of the trustees, be distributed to the beneficiary, but amounts not so distributed were to be added to the corpus of the trust. After the death of the grantor and Albert D. Lasker, the net income of the trust was to be distributed currently to the beneficiary. In the event of the death of the beneficiary leaving issue, the latter would succeed to the beneficial interest of the parent, but if there were no issue the beneficiaries of the other two trusts would succeed to such interest. In the event of the death of Albert D. Lasker and all of the issue of the grantor prior to the death of the grantor, then the trust might be terminated or modified in any manner by two of the trustees, other than the grantor. Each of the trusts contained, under section VIII (b) and (c), provisions identical in wording except for the name of the specific beneficiary in each. Those in the "Mary Insurance Trust," for the beneficiary, Mary Lasker Foreman, read as follows:

VIII. Anything herein contained to the contrary notwithstanding, this Trust may be modified or terminated at any time during the life of the Grantor

and Albert D. Lasker and of the survivor of them in any of the following ways, viz:

\*    \*    \*    \*    \*    \*    \*

(b) This Trust may be modified or terminated in whole or in part and without the consent of the beneficiaries hereunder at any time during the lifetime of the Grantor and the said Albert D. Lasker and of the survivor of them by an instrument in writing signed by any two of the then Trustees of this Trust other than the Grantor; provided that no such modification or termination may be so made as to vest any part of the corpus of the Trust Estate or the right to any part of the income thereof in anyone other than Albert D. Lasker and/or any one or more of the children of the Grantor and/or the issue of any child or children of the Grantor.

(c) This Trust may be modified or terminated in whole or in part at any time after the death of the Grantor and during the lifetime of Albert D. Lasker in any of the following ways, that is to say, (1) during the lifetime of Mary Lasker Foreman by an instrument in writing signed by Albert D. Lasker and the said Mary Lasker Foreman, and (2) after the death of the said Mary Lasker Foreman, by an instrument in writing signed by the said Albert D. Lasker and by any beneficiary not a minor who is then entitled to receive any income under the provisions hereof, or for whose benefit any of said income may be applied; provided, however, that no such modification or termination may be made so as to vest any part of the corpus of the Trust Estate or the right to any part of the income thereof in any one other than any one or more of the children of the Grantor and/or the issue of any child or children of the Grantor.

Any instrument in writing so modifying or terminating this Trust shall aptly set forth the terms of such modification or termination, subject, however, to the foregoing limitations, and the Trust Estate and the income thereof shall thereupon be held, managed, and/or distributed in accordance therewith.

On May 10, 1932, the petitioner, without receiving money or property of any kind therefor, assigned and transferred to each of the aforesaid trusts certain insurance policies which he had taken out upon his life and which were his property. The values of the policies on the date assigned and transferred to each trust were as follows:

| | |
|---|---|
| Mary insurance trust | $74,393.50 |
| Edward insurance trust | 77,057.50 |
| Frances insurance trust | 73,394.50 |

On June 26, 1935, Flora W. Lasker, Ralph V. Sollitt, and Gerhard Foreman were the trustees under each of these trusts. Foreman was the husband of Mary Lasker Foreman, the beneficiary of the Mary insurance trust, and had succeeded Albert L. Hopkins as trustee. On the aforesaid date, Sollitt and Foreman, as trustees, in the exercise of their powers under section VIII (b) of each of the trust instruments, executed formal instruments in the case of each trust, modifying the terms of each by eliminating and canceling section VIII thereof. On that date the values of the aforementioned

policies of insurance assigned and transferred to each of the trusts by petitioner were as follows:

| | |
|---|---:|
| Mary insurance trust | $110,167.62 |
| Edward insurance trust | 116,001.11 |
| Frances insurance trust | 107,396.45 |

Respondent contends that, for the payment of $375,000 by petitioner to his wife, petitioner received no consideration capable of being measured in terms of money and, accordingly, the payment constituted a gift under section 503 of the Revenue Act of 1932. Petitioner insists that the contract in question had a definite money value, largely in excess of the $375,000 paid. He points out that petitioner was a man of great wealth, with a life expectancy less than his wife, and that the value of the contract can be computed actuarially as the present value of a life estate in the sum represented by one-half of petitioner's agreed present net worth, such life estate to begin as of the death of a man now 58 years of age and to continue through the life of a woman now 40 years old. It is urged that such computation is justified here since it has been accepted by the courts and by the respondent in determining values of estates for life effective upon the conclusion of some present life estate. It is true that such valuations of life expectancies have been approved when based upon accepted tables of mortality where the intervening estate is limited to enjoyment of income from the property. Here, however, we have a very different situation. The execution of the present contract did not leave the petitioner merely as a life tenant with respect to one-half of his then property. Rather he remained as its absolute owner, free to use and consume it as he saw fit, subject to the one possible restriction that he might not will it or give it away with intent to defraud his wife. *Allen* v. *Henggeler*, 32 Fed. (2d) 69; certiorari denied, 280 U. S. 594. He was free to speculate with or venture it as and when he elected. It was liable for any business debts which he might contract. It is a far cry from that situation to a remainder estate not subject to such invasion by the life tenant.

The contract here, aside from the fact that it operated only upon such property as petitioner might own at his death, was conditioned wholly upon his wife living with him as his wife at the time of his death. That such circumstance would exist was, of course, impossible of present determination by any standard of probabilities. This is graphically demonstrated by the fact that within a few weeks, at most, after the payment involved here we find his wife residing in Nevada, establishing a legal residence for purposes of a divorce action.

The question of value here, however, goes further than this. Petitioner has paid $375,000 for a certain consideration, according to petitioner's contention. That consideration was the release of his obligation to leave a will, at his death, containing specific provisions. Petitioner did not receive a remainder interest in one-half of his estate by this release, since he possessed the entire property both before and after the release. The most that he can be said to have received was the right to give away one-half of his estate during his lifetime, and at death, to leave that portion of his estate to any object of his bounty other than his wife. What is the value in money of such a right? It is something possibly attractive to him because it permits a satisfaction of his then desires and gives him freedom in the ultimate disposition of his property, but it contains no basis supporting a valuation in terms of money. We therefore deny petitioner's request for a finding of a value in money or money's worth of the contract of October 14, 1938, to petitioner's wife, or such a value to petitioner of the release claimed to have been secured therefrom by the payment of $375,000 nine weeks later.

It is contended, however, that the contract of December 21, 1938, actually did effect a release by petitioner's wife of her marital rights in his property and that this was an adequate consideration in money or money's worth under our decision in *Bennet B. Bristol*, 42 B. T. A. 263, which we should follow irrespective of its reversal in *Commissioner* v. *Bristol*, 121 Fed. (2d) 129.

Without considering the correctness of our decision in the *Bristol* case, it need only be said that the question here is distinguishable. By the contract of December 21, 1938, petitioner's wife did not release her marital rights in petitioner's property. At that time she possessed no such rights. She had already released them under the antenuptial contract for a consideration consisting of petitioner's contractual obligation to leave her certain property by will. In the *Bristol* case the taxpayer, prior to marriage and for a consideration, purchased from his intended wife a release of the inchoate right to dower which she would obtain as a consequence of her contemplated marriage with him. In the present case all that passed to petitioner, if anything, for his payment was the release of his wife's contractual right, the value of which we have held to be impossible of determination in money or money's worth.

We therefore hold that no consideration in money or money's worth has been established for the payment of $375,000 by petitioner to his wife. Respondent is sustained in treating this payment as a gift.

The second issue arises upon the request by respondent for an increase in the deficiency by his inclusion, for purposes of computation of gift tax liability for the year 1938, of the value of certain policies of insurance transferred by petitioner to three trusts in 1932. Respond-

ent argues that the gifts of these policies were not completed until 1935 and that their value in that year is therefore includable for the purpose of computation of a deficiency in gift tax in 1938. Revenue Act of 1932, sec. 502, as amended by the Revenue Act of 1935, sec. 301 (a). Petitioner answers that these gifts were completed in 1932 before the approval of the revenue act of that year, which imposed a gift tax, and the gifts were thus beyond the reach of that tax. Secs. 501 (b) and 1113, Revenue Act of 1932.

The stipulated facts established that in 1932 petitioner formally assigned and transferred to three trusts created by his wife for the benefit of their three children, certain policies of insurance which he had taken out upon his life, the values of which are not questioned.

Respondent's theory that these conveyances in 1932 did not constitute present gifts is based upon paragraphs VIII (b) and (c) of each of the trust instruments, which paragraphs are set out in the findings of fact.

Respondent's position is that petitioner transferred property in 1932 but reserved such powers of revocation as to constitute a retention of equitable title and to render the gift incomplete prior to 1935, when all power to modify or revoke the trusts terminated. He argues that the situation here is substantially similar to that involved in *Helvering* v. *Hutchings*, 312 U. S. 393; *Rasquin* v. *Humphreys*, 308 U. S. 54; *Sanford Estate* v. *Commissioner*, 308 U. S. 637; *Burnet* v. *Guggenheim*, 288 U. S. 280; *Helvering* v. *Hallock*, 308 U. S. 106; *Helvering* v. *City Bank Farmers Trust Co.*, 296 U. S. 85; *Porter* v. *Commissioner*, 288 U. S. 436. Respondent quotes the following extract from the opinion in *Chickering* v. *Commissioner*, 118 Fed. (2d) 254; certiorari denied, 314 U. S. 636, as applicable:

A gift to a trustee reserving to the donor the economic benefit of the trust or the power of its disposition, involves no taxable gift. It is only upon the surrender by the donor of the benefit or power reserved to himself that a taxable gift occurs * * *

He also cites article 3 of Regulations 79, as amended by T. D. 5010, 1940–2 C. B. 293–295, which follows that rule.[3]

We agree with the rule but disagree as to its present applicability under the terms of either section VIII (b) or (c), upon which respondent relies. The power provided in section VIII (b) was not

---

[3] * * * A gift is incomplete in every instance where a donor reserves the power to revest the beneficial title to the property in himself. A gift is also incomplete where and to the extent that a reserved power gives the donor the right to name new beneficiaries or to change the interests of the beneficiaries as between themselves. * * *

The relinquishment or termination of a power to change the disposition of the transferred property, occurring otherwise than by the death of the donor (the statute being confined to transfers by living donors), is regarded as the event which completes the gift and causes the tax to apply. * * *

exercisable by petitioner or by petitioner in conjunction with any other person. The word "grantor" as used in this paragraph denotes, unquestionably, the creator of the trust, Flora W. Lasker. This provision is merely one providing that the trust might be modified or terminated by the action of two of the trustees. The petitioner was not a trustee. No power was thus vested in petitioner with respect to the exercise of that right. Even considering petitioner as the grantor under the trust, with respect to the assets conveyed by him to the trustees, the completeness of the gift would not be affected by a power to modify or terminate vested in others than the grantor. As is pointed out by counsel for petitioner, the legislative history of the gift tax provisions enacted in 1932 shows that the suggestion that transfers should not be treated as completed gifts subject to tax where power to revoke was vested in persons other than the grantor, was rejected. Conference Report No. 1492, 72d Cong., 1st sess., p. 18.[4]

Respondent himself has apparently recognized this limitation. Regulations 79, *supra*. Since petitioner had no power under section VIII (b), by himself or in conjunction with another, to amend or terminate the trust, such provision has no effect to postpone the completeness of the gifts. See *Herzog* v. *Commissioner*, 116 Fed. (2d) 591; *Rheinstrom* v. *Commissioner*, 105 Fed. (2d) 642.

Under section VIII (c) petitioner might in some contingency in the future acquire a power of amendment. If he should outlive Flora W. Lasker, who had a life expectancy in 1932 greater than his own, the power in question would arise if prior to that time the provisions of section VIII (c) had not been stricken by amendment of the trust by two of the trustees under section VIII (b). This action was in fact taken. Prior to the death of Flora W. Lasker the trust was amended by the elimination of section VIII and the power in petitioner to amend thus never came into being.

We find nothing in either of the two trust provisions upon which respondent relies which would make the transfers in 1932 incomplete as gifts in that year. See *John S. Mack*, 39 B. T. A. 220; *Commissioner* v. *O'Keeffe*, 118 Fed. (2d) 639.

> *Decision in the amount of deficiency as determined will be entered for the respondent.*

---

[4] This amendment provides that the gift tax is not applicable to transfers in trust where the right of revocation is (1) in the donor either alone or in conjunction with any person not having a substantial adverse interest or (2) in any person not having a substantial adverse interest, but that the termination of such power (other than by the donor's death) shall be considered a taxable transfer. The House recedes with an amendment changing the rule in the case of transfers in trust when the condition referred to in (2) obtains, as result of which amendment a transfer in trust, in respect of which the donor retains no power to revoke in himself either alone or in conjunction with another, will be treated as a transfer subject to gift tax.