ESTATE OF JOHN HOWARD HELFRICH, WALTER S. UNDERWOOD AND ELSA FREEMAN HELFRICH, EXECUTORS, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 109082.   Promulgated February 17, 1943.

*Guilford R. Windes, Esq.,* for the petitioners.
*F. F. Korell, Esq.,* for the respondent.

#### OPINION.

HILL, *Judge:* The Commissioner determined a deficiency of $1,271.83 in estate tax by including in decedent's gross estate the amount of certain moneys deposited by him out of his own funds in a bank in joint and several accounts with his wife, as trustees for his children. At the hearing respondent asked that the amount so added to the gross estate be increased by including the accumulated interest thereon in the amounts stipulated by the parties and that the deficiency be increased accordingly. All of the facts were stipulated and are so found. We set forth only those deemed material to an understanding of the issue.

Decedent, on November 26, 1934, opened in the Harris Trust & Savings Bank, Chicago, Illinois, a savings account for each of his four children, each of which was in the following form, with the number of the account and name of the child omitted:

Savings Account No._____, in the name of Mr. J. H. Helfrich and/or Mrs. Elsa F. Helfrich, Trustees
for_____

The names and ages of the children and the numbers of their respective accounts were as follows:

| Name | Age on Nov. 26, 1934 | Account No. |
|---|---|---|
| John Peter Helfrich | 13 years, 7 months | 202544 |
| Judith Ann Helfrich | 4 years, 1 month | 202545 |
| Howard Neil Helfrich | 10 years, 10 months | 202546 |
| Janet Elizabeth Helfrich | 6 years, 5 months | 202547 |

At the time the accounts were opened decedent and his wife signed and delivered to the bank four instruments, of which the following is a copy:

SPECIAL TRUST AGREEMENT

Dated November 26, 1934.

J. H. Helfrich and Mrs. Elsa F. Helfrich herein called the "trustees" hereby make known and declare that they hold all moneys now and hereafter deposited in account number_____ in Harris Trust and Savings Bank in trust for_____ _____, herein called the "beneficiary", whose address is 707 University Place, Wheaton, Ill.

During the lifetime of the trustees and the survivor of them all moneys now and hereafter deposited in said account may be paid to or upon the order of the trustees, or either of them, and upon the death of the survivor of the trustees all moneys deposited in said account shall be payable to or upon the order of the beneficiary. If either trustee shall be under legal disability which shall have been declared by a court of competent jurisdiction, he/she shall be deemed deceased for the purposes of this agreement. The said bank shall not be responsible for or required to see to the proper application of funds withdrawn from said account. The trustees represent that there is existing no agreement in respect of the said account except as herein set forth.

ELSA F. HELFRICH
J. H. HELFRICH
*Trustees* for_____.

The blank spaces on each instrument were filled with the name of one of the children and his account number. Decedent originally deposited $1,500 in each account. On January 4, 1935, he added $1,000 to each and on April 1, 1935, $1,500 to each. The only withdrawal from any of the accounts was made for John Peter Helfrich about the first week in September 1939 and was used by the beneficiary in defraying part of his college expenses.

Decedent died intestate September 18, 1939. The balances in the accounts on that date were as follows:

| Account No. | Balance |
|---|---|
| 202544 | $3, 794. 13 |
| 202545 | 4, 294. 13 |
| 202546 | 4, 294. 13 |
| 202547 | 4, 294. 13 |

Decedent's will was admitted to probate by the Probate Court of DuPage County, Illinois, on October 23, 1939. The executors filed an estate tax return with the collector for the first district of Illinois, stating a gross estate of $112,155.24.

In addition to adjustments not contested respondent added to decedent's gross estate the amounts in the four savings accounts hereinabove mentioned and determined a deficiency in estate tax. Respondent contends that the opening of the accounts and the execution of the so-called trust agreements do not constitute valid trusts and that such amounts are therefore includable in decedent's estate. He also maintains that, regardless of whether valid trusts were created, the moneys in the savings accounts were includable in the estate for estate tax purposes because (1) decedent as trustee maintains such control over their disposition as to amount to a retention of ownership thereof by the grantor and (2) such transfers in trust, if any, were to take effect in possession or enjoyment only at or after the death of decedent.

Petitioners contend that the trusts were valid under Illinois law and that they were not revocable, either by decedent or by decedent in conjunction with his wife.

It is not controverted that the moneys in the four bank savings accounts in question were deposited therein by decedent from his own funds.

The law of Illinois controls in determining whether valid trusts were created. The requirements of a valid trust under the law of Illinois have been set forth by the Supreme Court of that state as follows in *Gurnett* v. *Mutual Life Insurance Co.*, 356 Ill. 612; 191 N. E. 250:

* * * To constitute a valid trust of personal property, there must be a declaration by a person competent to create it, a trustee, designated beneficiaries, a certain and ascertained object, a definite fund or subject-matter, and its delivery or assignment to the trustee, Godefroi on Trusts (5th Ed.) p. 7; *Cruwys* v. *Colman*, 9 Ves. 319; *Brown* v. *Spohr*, 180 N. Y. 201; *Johnston* v. *Scott*, 137 N. Y. S. 243; *Gough* v. *Satterlee*, 52 N. Y. S. 492.

It is evident that the so-called trust instruments do not meet the above stated requirement as to "a certain and ascertained object." Neither by express provision nor by implication from the language of the instruments here in question can the object and purpose of the

so-called trusts be ascertained. We think, therefore, that valid trusts were not created.

If valid trusts were not created by the instruments in question, the law of Illinois restricting the purposes to which the trust funds may be devoted as indicated in *Helvering* v. *Stuart*, 317 U. S. 154, does not apply and the decedent and his wife could have used the moneys in the accounts for any purpose they chose. This being true, such moneys were includable in decedent's estate for estate tax purposes.

Since the decedent and his wife, or either of them, had according to the literal terms of the so-called trust agreements the unrestricted power to withdraw all of the moneys from the accounts or to order them paid to whom they or either of them might designate, it appears that during the lives of decedent and his wife the accounts with the accompanying agreements were in effect merely bank savings accounts set up as a kind of budgetary reserve to meet their anticipated financial outlays in respect of their children. They, or either of them, could have terminated the accounts at any time by the mere expedient of exhausting the funds therein.

If, however, such accounts should be existent at the time of the death of the survivor of decedent and his wife the transfer, under the provisions of the so-called trust agreements, of the moneys then represented in such accounts would at and by reason of such death take effect in possession or enjoyment of the children. It follows that whether or not valid trusts were created there was no gift or transfer in trust or otherwise effective in possession or enjoyment until at or after the death of decedent. Therefore, the moneys represented by the savings accounts were includable in decedent's estate for estate tax purposes under section 811 (c) of the Internal Revenue Code.[1]

Assuming there were valid trusts, the trust instruments did not vest in the named beneficiaries the right to the distribution, possession, enjoyment, or benefit of any of the trust funds during the lifetime of the survivor of the trustees. Only upon the death of such survivor can the beneficiaries claim the right under the terms of the trust to the possession or enjoyment of the trust funds. If they should be given the possession or enjoyment thereof prior to the death of the surviving trustee it would not be by virtue of a right created in the

---

[1] (c) TRANSFERS IN CONTEMPLATION OF, OR TAKING EFFECT AT DEATH.—To the extent of any interest therein of which the decedent has at any time made a transfer, by trust or otherwise, in contemplation of or intended to take effect in possession or enjoyment at or after his death, or of which he has at any time made a transfer, by trust or otherwise, under which he has retained for his life or for any period not ascertainable without reference to his death or for any period which does not in fact end before his death (1) the possession or enjoyment of, or the right to the income from, the property, or (2) the right, either alone or in conjunction with any person, to designate the persons who shall possess or enjoy the property or the income therefrom; except in case of a bona fide sale for an adequate and full consideration in money or money's worth. * * *

trusts, but by virtue only of the exercise of a power lodged in the trustees which they were under no obligation to exercise. The only provision in the trusts with respect to the expenditure or distribution of the trust funds prior to the death of the decedent and his wife, the trustees, is the power retained by them to withdraw any or all moneys from the trust accounts or order them to be paid to others. Whether the trustees shall exercise that power, or to what extent they shall exercise it, is obviously discretionary with them. Also, the object or purposes for which expenditures of the funds may be made are not defined or limited in the trust instruments. Such object or purposes are not even referred to therein. Unquestionably, decedent and his wife as trustees had the power to withhold, prior to his death, the possession, use, enjoyment, or benefit of any of the funds from the beneficiaries. Hence, it must be determined that the trust instruments conferred no property right in the trust funds which entitled the beneficiaries to the possession or enjoyment thereof until at or after the death of decedent.

Bearing in mind that the question we have involves only those funds which were still in the saving accounts at decedent's death, it is self-evident that the transfers of such funds to the children, if and when it may occur, can take effect in possession or enjoyment only after the death of the decedent. Also, the conclusion is inescapable that the grantor of the trusts could have intended only that the transfer of such funds should take place at or after his death.

We, therefore, hold that the moneys in the bank savings accounts in question at the time of decedent's death were properly included in his estate for estate tax purposes.

Reviewed by the Court.

*Decision will be entered under Rule 50.*

DISNEY and OPPER, *JJ.*, concur only in the result.

---

LEECH, *J.*, dissenting: The majority support their conclusion, apparently, upon three premises. These are: (1) no trusts were created; (2) if created, they were revocable; and (3) the transfers of the funds thereto were to take effect in possession or enjoyment only at decedent's death. In my opinion, none of these positions is sound.

Obviously, Illinois law controls. *Helvering* v. *Stuart*, 317 U. S. 154. I agree with the general statement of that law contained in the majority opinion as appearing in *Gurnett* v. *Mutual Life Insurance Co.*, 356 Ill. 612; 191 N. E. 250. In my opinion, under the rule there stated, four trusts were created. See *Robinson* v. *Appleby*, 75 N. Y. S. 1; affd., 73 N. Y. 626; 66 N. E. 1115; *Macey* v. *Williams*, 8 N. Y. S. 658; *Farleigh* v. *Cadman*, 159 N. Y. 169; 53 N. E.

808; and *Minor* v. *Rogers*, 40 Conn. 512. The majority do not and can not question the existence of a competent declarant, trustees, beneficiaries, subject matter, and delivery. They think, however, that there was no "certain and ascertained object." But how can that be said? Each fund was expressly declared to be held "in trust" for a named "beneficiary"—the child of the declarant. Can it be doubted that the benefit of one's own child is "a certain and ascertained object?" I think not. *Kilgore* v. *State Bank of Colusa*, 372 Ill. 578; *Brown* v. *Spohr*, 180 N. Y. 201; 73 N. E. 14. See also *Appleby* case, *supra*.

So far as I know, the specific question here has not been squarely decided by the Illinois courts. It will be noted, I think with significance however, that most of the authorities cited by the Illinois court, *supra*, are those of New York courts. And the question has been, I think, categorically answered there in a situation that goes far in disposing of the entire controversy here. That case is *Robinson* v. *Appleby, supra*. The facts in that case were that one Helen Pratt deposited $2,700 in a savings account entitled "Helen C. Pratt in trust for Freddie H. Robinson. Note. Not to be paid to F. H. R. until he is thirty years of age." The depositor also signed a paper stating that she desired to open an account in her name in trust for Freddie Robinson, the account to be governed by the rules and regulations of the bank, and after her death the balance then due on the account not to be payable to Freddie Robinson until he was thirty years of age. The beneficiary predeceased Helen Pratt, his death occurring about a year after the trust account had been opened. Four years after his death Helen Pratt closed the account and gave the bank a receipt in full signed: "Helen C. Pratt in Trust." After her death the legal representative of the beneficiary brought an action against the legal representatives of Helen C. Pratt to recover the amount of money withdrawn from the account at the time it was closed subsequent to the death of Freddie Robinson. The court held in favor of the administrator of Freddie Robinson's estate, permitting judgment for the amount withdrawn plus interest at 6 percent per annum. In the decision the court cited 67 N. Y. S. 480, stating:

* * * The intent of the depositor at the time of the deposit determines the nature and legal effect of the act, and all the surroundings, facts, circumstances, and declarations will be taken into consideration on the question of intent, but the deposit in the form of a trust, unqualified and unexplained, creates a trust at the time, which, once legally established cannot be revoked, in the absence of a reservation of the power of revocation.

Were these trusts revocable? In Illinois, as in New York and generally, a power of revocation by the settlor must be reserved to be effective. *Hubberd* v. *Buddemeier*, 328 Ill. 76; 159 N. E. 229. No such power appears in the literal provisions of any of the present

instruments. The position of the majority, nevertheless, is that each trust was, in fact, revocable because the grantor had the power to revoke each trust, *pro tanto*, by withdrawing the funds thereof in his individual capacity during his lifetime.

Each trust instrument consists of five sentences. Effect must be given, if possible, to each of these in construing the entire instrument. *Heitzig* v. *Goetten*, 347 Ill. 619; 180 N. E. 428; *Brinkerhoff* v. *Ridgley*, 232 Ill. App. 12. So read, no funds could be withdrawn legally from these accounts except by the trustees as such, and not in their capacity as individuals.

The second sentence of each trust provides that the moneys in each account "may be paid to or upon the order of the trustees, or either of them * * *." No provision is made for payments to the settlor or his wife as individuals. The fourth sentence of each instrument provides that "The said bank shall not be responsible for or required to see to the proper application of funds withdrawn from said account." That sentence can mean nothing else than the expression of an intention that the money paid to the trustees continues to be impressed with the trust. Any other construction would render the last quoted sentence meaningless.

As petitioners argue, "If any withdrawal by the trustees amounted to a revocation *pro tanto* there would be no occasion to protect anyone from the duty of watching the application of the funds so withdrawn".

Decedent, as trustee, was given broad power over each trust corpus. He was the settlor. But, neither the common identity of the settlor and trustee, nor those powers, renders the trusts revocable. *Estate of Edward E. Bradley*, 1 T. C. 518; *Frederick Ayer*, 45 B. T. A. 146 (Com. acq., I. R. B. No. 4, Jan. 26, 1942). In the latter case, where both such conditions existed, we said such power:

* * * was not an unlimited power in the trustees, but concerned only the management of the trust property for the purposes of the trust as set forth in the indentures.

In *Carleton H. Palmer*, 40 B. T. A. 1002; affd., 115 Fed. (2d) 368, the trustees were given the power "to exercise freely and in their uncontrolled discretion all the rights, powers and privileges appertaining to full and complete ownership thereof." In referring to the broad powers of the trustees, we stated in our opinion as follows:

* * * Those powers which petitioner as grantor reserved to himself as one of the trustees relate to the management of the trust corpus and do not vest in the grantor any control as an individual over the economic benefits or enjoyment of the trust property. * * *

Under the common law, which Illinois follows, a trustee is subject to a very high standard of accountability in the management of trust funds. He can not even loan trust funds to himself under a trust

which gives him "absolute and uncontrolled discretion in making trust investments." *Carrier* v. *Carrier*, 226 N. Y. 114; 123 N. E. 135. I am satisfied that the trustees here could not withdraw the trust funds without becoming personally accountable therefor, and that no power of revocation by the settlor was therefore reserved in any of the trusts. See *Appleby* case, *supra.*

It may be argued that the trustees could use the trust funds for the maintenance of the minor children and that these funds were therefore includable in the decedent grantor's gross estate. *Mathilde B. Hooper, Administratrix*, 41 B. T. A. 114. It is true that in Illinois a parent does have the legal obligation to support his minor children until they are emancipated. *Peters* v. *Industrial Commission*, 314 Ill. 560; 145 N. E. 629. But here, as distinguished from the *Hooper* case, the trust instruments did not provide that the funds were to be used for the maintenance of the children. Generally, such funds can not be used to perform this or any other obligation of the parents if the instrument does not so provide. Perry on Trusts, 7th Ed., vol. 2, secs. 612, 618. This is the rule followed in Illinois. *Bedford* v. *Bedford*, 136 Ill. 354; 26 N. E. 662. Thus, the trust funds here could not be used to meet that legal obligation of the decedent, and the *Hooper* case is, therefore, not in point. The only withdrawal from any of the trusts here was a $500 disbursement on account of expenses of a college education for one of the children. However, a college education for the children was not a necessity. 27 American Jurisprudence 762.

Were the transfers to the trusts for the children intended to take effect in possession or enjoyment only at the death of decedent? Again I think not. Even if it be assumed that the decedent would have had the right to the property of the trusts for such of his children who predeceased him, at the death of those children, we have already decided that such a right was not one intended to become effective in possession or enjoyment at the death of decedent. *Estate of Edward Lathrop Ballard*, 47 B. T. A. 784; *Albert D. Lasker*, 1 T. C. 208; *Mabel Shaw Birkbeck, Estate*, 47 B. T. A. 803. See also *Commissioner* v. *Kellogg*, 119 Fed. (2d) 54. In such circumstances it would have been the death of the children and not the decedent that would have been the determinant of the possession or enjoyment of the property by decedent. But, in my opinion, decedent did not retain even that contingent right here. The funds of these trusts, from the date of their creation, could be used only for such benefit and enjoyment of decedent's children as were not within the legal obligation of the decedent to supply. The gift was complete at that time. Each beneficiary then became absolutely and irrevocably entitled to receive such benefit and enjoyment during his or her lifetime, or their

respective estates at their death. The death of decedent could not and did not affect that fact. *Fowler* v. *Gowing*, 152 Fed. 801. See *Robinson* v. *Appleby*, *supra; Farleigh* v. *Cadman*, *supra*. If the decedent grantor ever lawfully received, as an individual, any of the property of these trusts, it could have been only by means of a voluntary transfer from a child, *inter vivos*, or as heir or beneficiary of the will of a child who predeceased him. That, of course, does not constitute a reversion, and the rule of *Helvering* v. *Hallock*, 309 U. S. 106, is not applicable. *Robinson* v. *Appleby*, *supra; Farleigh* v. *Cadman*, *supra*.

I think four irrevocable trusts were created and that the funds in the savings accounts composing their corpora are not includable in decedent's estate for Federal estate tax purposes.

ARUNDELL, BLACK, MELLOTT, and TYSON, *JJ.*, agree with this dissent.