Irma Lampert v. Commissioner.
Lampert v. Commissioner
Docket No. 53021.
United States Tax Court
T.C. Memo 1956-226; 1956 Tax Ct. Memo LEXIS 72; 15 T.C.M. (CCH) 1184; T.C.M. (RIA) 56226; September 28, 1956
*72 Petitioner's transfer of stock to her children in return for the settlement of their lawsuits and claims against her held under the circumstances, made without donative intent and for an adequate consideration in money or money's worth within the meaning of section 1002, Internal Revenue Code of 1939. David W. Raudenbush, Esq., First Nationl Bank Building, St. Paul, Minn., for the petitioner. Merl B. Peek, Esq., for the respondent. BRUCE Memorandum Findings of Fact and Opinion BRUCE, Judge: Respondent has determined a deficiency in petitioner's gift tax for the calendar year 1950 in the amount of $34,821.59. The only issue to be determined is whether certain transfers of stock were made by petitioner to her children for an adequate and full consideration in money or money's worth. Another *73 issue presented by the pleadings, relating to the value of the stock when transferred, has been stipulated by the parties. Findings of Fact Some of the facts have been stipulated and are so found. Petitioner, a resident of St. Paul, Minnesota, is the widow of Arthur J. Lampert (hereinafter sometimes referred to as decedent) who died testate on April 28, 1950. On March 5, 1951, petitioner filed a gift tax return with the collector of internal revenue for the district of Minnesota in which she reported no gifts but noted the transfer in 1950 of 1,378 shares of common stock of the Lampert Lumber Company (hereinafter referred to as the Company). In June of 1937, decedent established four identical trusts for the benefit of his four children. The corpus of each trust consisted of 120 shares of common stock of the Company and each trust indenture provided that the primary beneficiary was to receive the net income from the trust until age 35, at which time the corpus was to be distributed to that beneficiary. The decedent, petitioner, and Leonard Lampert, Jr., brother of decedent, were named co-trustees of each of the four trusts. Decedent left surviving him a daughter and three *74 sons, whose names and dates of birth are as follows: Name
Date of Birth
Leonard Frank Lampert
Nov. 13, 1919
Eleanor Lampert Plunkett
Dec. 9, 1921
Arthur J. Lampert, Jr.
Mar. 8, 1925
Kenneth R. Lampert
Mar. 8, 1925 On September 25, 1940, petitioner was appointed general guardian of the children. Decedent's will provided, after certain specific bequests, that the residue of the estate, which consisted largely of Lampert Lumber Company common stock, be placed in trust for the benefit of petitioner for life, or until the first of decedent's then living children reached the age of 28. The will further provided that from the time that the first then living child reached the age of 28, the trust was to be held as follows: one-third in value of the residue for the benefit of petitioner for life with remainder to the children and the balance of the residue in equal portions for the benefit of decedent's children. As each child attained age 28, he was to receive one-half of his share of the corpus of the trust outright and the net income from the balance of his share of the trust. As each child reached the age of 35, such child was to receive the balance of his portion *75 of the trust fund. The will further provided: "FOURTH: I hereby make, nominate and appoint my said wife, Irma Lampert, my brother, Leonard Lampert, Jr., and said Stephen Schmitt, Executors of this, my Last Will and Testament and Trustees of the trusts herein created, and I hereby authorize and empower my said Executors and Trustees, in whichever capacity they may then be acting, at their discretion, to sell, transfer, lease, exchange mortgage and convey, any or all real or personal property of which I may die seized or possessed (except that herein-before specifically bequeathed in Paragraph Second hereof), or which may hereafter become a part of the trusts herein created, and to make, execute and deliver, any and all instruments in writing, necessary or proper, for the purpose of carrying out the powers herein vested. "I further authorize and empower my said Executors and Trustees, in whichever capacity they may then be acting, to borrow funds from themselves, or any of them, or from other sources, for the purpose of carrying out the probate of my estate or any provision of the trust hereby created with authority to pledge the estate or trust property as security therefor. *76 "The Trustees shall invest and reinvest all principal cash in the trust fund and all other monies coming into their hands in such manner as they may deem for the best interest of my estate, although such investment shall not be of the character authorized by law for the investment of trust funds. It is may wish and I do hereby authorize and direct my said Trustees to hold and retain all investments which come into their hands from my estate until they, in their sole discretion, after careful investigation and consideration, deem it advisable to make a change therein. "In making investments, the Trustees are directed to charge all premiums thereon against or to principal, as the case may be, and not against or to income. They may determine in all other cases what receipts are income and what are principal and what disbursements are chargeable to income and what to principal. "In the event of the death, inability or refusal to act of any of my said individual Executors or Trustees, then it is my will that the remaining Executors and Trustees select a successor." Petitioner refused to act as executrix under the will. The will was then duly admitted to probate before the Probate *77 Court, Ramsey County, Minnesota, upon petition of the remaining two executors. On May 1, 1941, during the period of administration of the estate, in order to provide the executors with needed cash for expenses and taxes, petitioner purchased from the estate 900 shares of common stock of the Lampert Lumber Company at an appraised value of $105 per share. (By 1950 stock dividends had increased the 900 shares to 1,378 shares.) By order dated September 6, 1941, the District Court for Ramsey County confirmed the appointment of trustees under the will. The accounts of the executors were allowed and the final decree of distribution was entered by the Probate Court on September 8, 1941. It appears therefrom that the then residue of the estate to be distributed included 2051 shares of Lampert Lumber Company stock. The Lampert Lumber Company is a corporation organized in 1924 under the laws of Minnesota for a period of 30 years. Its stock is not listed on any stock exchange but is held by or for the benefit of members of the Lampert families (including a sister and the family of a deceased brother of the decedent), and certain officials and employees of the Company. In January of 1947, Leonard *78 Lampert, Jr., and members of his immediate family purchased from the Company 2,000 authorized but unissued shares of Lampert Lumber Company common stock at $100 per share. The purchase price was charged to the open account of Leonard Lampert, Jr., on the books of the Company. In January of 1948, Leonard Lampert, Jr., and family had received and retained a stock dividend of 200 shares of common stock on the 2,000 shares purchased and a cash dividend of $46,000. In the same year, Leonard Lampert, Jr., as president and general manager of the Lampert Lumber Company received substantial cash bonuses in addition to his salary of $33,000. As a consistent practice in the past the corporation had sold stock to its officers and key officials as an incentive to good management. Early in 1949 petitioner, Leonard Frank Lampert, Kenneth R. Lampert, Arthur J. Lampert, Jr., and Warren F. Plunkett, acting for his wife, Eleanor Lampert Plunkett, complained to Leonard Lampert, Jr., of certain acts and practices of the Company. Specifically, petitioner's sons and her son-in-law objected to the purchase by Leonard Lampert, Jr., of 2,000 shares of Company stock at $100 per share. Negotiations between *79 petitioner and her family and the officers of the Company headed by Leonard Lampert, Jr., were conducted through counsel during the spring of 1949 in an attempt to work out a settlement. A settlement agreement between the parties was reached on April 19, 1949, under which the Company was to purchase 2,200 shares from Leonard Lampert, Jr. Pursuant to the agreement, at a meeting of the Company stockholders on April 22, 1949, petitioner, individually and as trustee, and Leonard Frank Lampert (who were the only two complainants who then held common stock of the Company registered in their names), voted affirmatively upon a resolution approving the purchase by the corporation of the 2,000 shares of common stock issued to Leonard Lampert, Jr. in 1947, together with the 200 shares received as a dividend, at a price of $145 per share. The board of directors subsequently consummated the purchase. Warren F. Plunkett, on behalf of his wife Eleanor, refused to approve of the settlement agreement. On July 19, 1949, he commenced two civil actions on behalf of his wife against the trustees of the inter vivos trust established for her benefit and against the trustees of the testamentary trusts *80 in which she had an interest. Petitioner was named as a co-defendant in each action. One complaint alleged that a considerable portion of the trust established in 1937 for Eleanor's benefit had been lost by the wrongful and negligent acts of the trustees, who were charged in the complaint with wrongful payment of excessive bonuses to themselves and other officers of the Company, with wrongfully permitting excessive borrowing from the Company, with wrongfully purchasing shares of common stock from the Company, with wrongfully failing to properly distribute income to Eleanor and with other alleged wrongful and unlawful practices. The complaint prayed for an accounting, for a return of the purchased stock to the Company, a return of the money borrowed from the Company, and a surcharge of the trustees' accounts. The other complaint alleged similar wrongful practices with respect to the testamentary trusts created by the will of Arthur J. Lampert, and specifically charged that petitioner wrongfully and unlawfully purchased 900 shares of common stock of the Company during the probate of the estate. Judgment was requested that an accounting of trust property and affairs be made, that the *81 shares of stock purchased by petitioner, together with the shares represented by dividends thereon, be returned to the testamentary trust, that other stock purchased from the Company be returned as well as any money borrowed from the Company by the stockholders, that certain moneys distributed to petitioner be returned to the trust, and that the trustees' accounts be surcharged in favor of the plaintiff. Both complaints requested that the trustees be removed and that they bear the costs of litigation. Because of the understanding reached with the officers of the Company in April of 1949, petitioner's three sons did not join Eleanor as co-plaintiffs in her actions against the co-trustees. However, they proposed to retain theirr own attorneys to file separate actions against petitioner alone if they did not receive redress equal to that which Eleanor might achieve through her lawsuits. Leonard Frank Lampert furnished certain data from the corporate records in his possession to Warren Plunkett for use in the litigation commenced on behalf of Eleanor. Petitioner, through counsel, answered both complaints with specific defenses, as did the other defendants. Warren Plunkett then filed *82 replies on behalf of Eleanor, alleging further unlawful practices by petitioner and her co-defendants. The defendant trustees subsequently petitioned the District Court of Ramsey County, Minnesota, for approval of accounts up to September 6, 1948. Eleanor Plunkett resisted this move on the ground that the approval of accounts should be conslidated with the actions brought by her or be postponed until after the trial of the two civil actions. Thereafter, Eleanor suffered a nervous breakdown and was confined to a private sanitarium. Motions by Eleanor to restrain the trustees from going forward with a hearing on their petition for approval of accounts were denied, and the rulings were affirmed by the Minnesota Supreme Court, to which the Plunketts had appealed. Thereafter, Warren Plunkett successfully opposed an attempt by the trustees to obtain the appointment of a general guardian for the incompetent Eleanor's estate. Procedural controversies involving the two lawsuits and the attempt by the trustees to obtain approval of their accounts continued through the summer of 1950. On September 28, 1950, a series of conferences began between Warren Plunkett and his brother, as representatives *83 of Eleanor, and the trustees, including petitioner. It was proposed by the Plunketts that the shares of Lampert Lumber Company common stock purchased by petitioner from her husband's estate be added to the five testamentary trusts in proportion to their present assets, that they be substituted as co-trustees of the inter vivos trust and of the testamentary trust for the primary benefit of Eleanor, and that as trustees, the Plunketts would sell all the common stock held in the Eleanor Plunkett trusts to the Company at a price to be agreed upon. Leonard Lampert, Jr., expressed a willingness to follow this plan which he considered to be in the best interest of all concerned. He further took the position that if such a solution was not reached, he would by a reorganization attempt to free the corporation from "these troublesome stockholders" when the corporate charter expired in 1954. His primary interest was to conduct the corporation in such a way that the Plunketts would no longer be a part of the Company. On October 6, 1950, petitioner was informed by her counsel that if she did not cooperate in the settlement proposed by the Plunketts, Leonard Lampert, Jr., would probably insist *84 on separating the A. J. Lampert family interests from the corporation at the end of the corporate life. Petitioner was reluctant to transfer the 1,378 shares which she regarded as her own property and she was further unwilling to turn Eleanor's share over to Warren Plunkett. However, she did not wish her interests to be separated from those of the Company and since her lawyers had advised her that Warren was willing to permit the appointment of a corporate trustee of Eleanor's property, she agreed to the idea of a settlement. As the result of further negotiations, a comprehensive settlement agreement was signed as of October 21, 1950, by all parties interest in the litigation. As one of the reasons for agreement, the document recites: "WHEREAS, among other claims asserted by or in behalf of Eleanor L. Plunkett, particularly in the aforesaid action in the District Court for Ramsey County, Minnesota, bearing file number 268816, is the following: "That said Irma Lampert wrongfully purchased from the estate of her husband, Arthur J. Lampert, 900 shares of stock of Lampert Lumber Company; that said shares if not so purchased by her would have gone into the A. J. Lampert testamentary *85 trust; that on account of said alleged wrongful purchase said shares of stock, which have since been increased to 1,378.08 [1,378] shares by reason of stock dividends, should be transferred by said Irma Lampert to the testamentary trust; if in accordance with such claim said shares of stock were thus transferred to the said testamentary trust, such transfer would benefit not only said Eleanor L. Plunkett but also the other three children of said Irma Lampert; said Irma Lampert, while not recognizing the validity of such claim does realize that its determination would entail expensive and protracted litigation, the outcome of which would necessarily be uncertain, and to settle said dispute and set at rest the claim made by said Eleanor L. Plunkett and like claims which might be made with equal force by her other children, said Irma Lampert is willing to agree to the disposition of 1378.08 [1,378] shares of said stock in the manner hereinafter set forth in this instrument, * * *" The agreement provided for the transfer by petitioner of the 1,378 shares of Lampert Lumber Company common stock acquired from her late husband's estate as follows: 458 shares to the testamentary trust *86 in which she had a life interest as income beneficiary, with remainder to the children; 230 shares in trust for Eleanor L. Plunkett, and 230 shares outright to each of her three sons. The agreement further provided for the segregation of that portion of the A. J. Lampert testamentary trust held solely for Eleanor from the remaining assets and the setting up of an independent trust under the same terms for Eleanor's benefit. Petitioner, Leonard Lampert, Jr., and Stephen Schmitt agreed to resign as trustees of the Eleanor Plunkett separate testamentary trust and petitioner, Leonard Lampert, Jr., and William J. Huch agreed to resign as trustees of the A. J. Lampert inter vivos trust established for the benefit of Eleanor. The parties further agreed that Warren F. Plunkett, Hugh V. Plunkett, Jr., and the First National Bank of Austin, Minnesota, were to be appointed successor trustees under both trusts. The agreement further provided for the substitution of Leonard Frank Lampert as a trustee of the A. J. Lampert Testamentary Trust in place of Leonard Lampert, Jr. As guardian of Eleanor L. Plunkett, Warren Plunkett agreed to consent to the dismissal of the two actions pending against *87 petitioner and her co-trustees. All four children agreed to waive all objections to the allowance of the trustees' accounts. On December 1, 1950, the District Court of Ramsey County, Minnesota, entered its orders approving the agreement insofar as it involved the subject trusts. On the same date the two civil actions were dismissed. On December 1, 1950, in accordance with the terms of the settlement agreement, petitioner transferred 1,378 shares of common stock of the Lampert Lumber Company as follows: No. of
Shares
Transferee
458
Irma Lampert, Leonard Frank Lampert
and Stephen Schmitt, as trustees of
the trust created by the last will and
testament of Arthur J. Lampert for
the benefit of Irma Lampert, as in-
come beneficiary.
230
Leonard Frank Lampert, a son.
230
Kenneth R. Lampert, a son.
230
Arthur J. Lampert, Jr., a son.
230
Warren F. Plunkett and Hugh V.
Plunkett, as trustees of the trust
created by Irma Lampert for Eleanor
Lampert Plunkett, dated November
30, 1950.
1,378
Total shares
From October 17, 1950 to and including December 1, 1950, the 1,378 shares of common stock of the Lampert Lumber Company transferred by *88 petitioner had a fair market value of $155 per share. In the notice of deficiency respondent determined that petitioner's transfer of the 1,378 shares of stock was not made without donative intent and for an adequate consideration and determined that the transfer was a taxable gift. Opinion In 1941, during the administration of her late husband's estate, petitioner purchased 900 shares of Lampert Lumber Company common stock from the estate. The residue of the estate consisted primarily of common stock of the Company. Under the terms of the decedent's will, and upon the first of decedent's then living children becoming 28 years of age, the residue of the estate was to be held in five separate trusts: one-third of the residue in trust for the benefit of petitioner with remainder to the four children and two-thirds of the residue in trust in equal shares for the benefit of each of the four children. Petitioner was named as one of three co-trustees under the trust. At age 28, each child was to receive one-half of his share of the corpus of the trust and at age 35, the balance of his portion. Petitioner was also a co-trustee under certain inter vivos trusts set up in 1937 by decedent *89 for the benefit of each of the four children. During 1947 petitioner's brother-in-law, president of the Company, purchased 2,000 shares of common stock of the Company from the corporation at $100 per share. No cash consideration was paid for the stock, and the purchase price was charged to his open account on the books of the Company. Petitioner made no objection to this transaction. Petitioner's son-in-law, Warren Plunkett, on behalf of his wife, and petitioner's three sons objected to the transactions noted above. Two complaints were filed on behalf of petitioner's daughter which alleged that petitioner and her co-trustees had by their negligent and wrongful acts caused considerable portions of the daughter's trust property to be lost. Petitioner's three sons threatened similar litigation if they did not receive treatment equal to any redress that their sister might gain through her lawsuits. One of petitioner's sons who, as a stockholder, had access to the company records, furnished information to Plunkett for the latter's use in drafting the complaints and prosecuting the claims against petitioner and the other defendants. Petitioner's brother-in-law was concerned only with *90 eliminating the "troublesome Plunketts" from the Company and to that end he proposed to agree to a compromise settlement. He threatened petitioner that if she did not agree to such a settlement he would take steps to separate her interests from the Company by a reorganization. Although at first unwilling to do so, petitioner eventually signed a settlement agreement pursuant to which she transferred the shares of common stock purchased from her husband's estate to her children in return for the discharge of the claims against her. Respondent has determined, and now contends that petitioner's transfer was not made without donative intent nor for an adequate consideration in money or money's worth within the meaning of section 1002 of the Internal Revenue Code of 1939, [1] and that therefore the value of the shares transferred is a taxable gift. *91 Although the entire value of property transferred for a consideration not reducible to money value constitutes a gift, a transaction which is made at arm's length in the ordinary course of business and free from any donative intent will be considered as made for an adequate and full consideration in money or money's worth. Regs. 108, sec. 86.8. Thus, a taxpayer's transfer of $120,000 to a trust for the benefit of her estranged daughter in settlement of a threatened lawsuit by the daughter has been held a transfer for an adequate consideration within the meaning of the gift tax provisions of the Code. Catherine S. Beveridge, 10 T.C. 915, appeal dismissed by C.A. 4, December 1, 1948 (unreported). In our view petitioner in making the transfer of stock to her children in settlement of their claims was not motivated by love and affection or by a desire to benefit the natural objects of her bounty. On the contrary, her testimony discloses a desire on her part to protect her interests from the claims of her children and the threatened separation of her interests from the Company by her brother-in-law. In particular, petitioner regarded the litigious maneuverings of her son-in-law *92 with distaste, and was induced to settle the suits against her only after protracted negotiations by her attorneys, whose active participation itself negates the presence of a donative intent. Cf. Lasker v. Commissioner, 138 Fed. (2d) 989, reversing 1 T.C. 208 for other reasons. The facts disclose a settlement, entered into by adverse parties, of actual and threatened lawsuits. It is, of course, not within our province to determine definitely the rights of the parties to such litigation. It is sufficient that, in our opinion, the various claims of petitioner's children were not, as contended by respondent, so "extremely tenuous in nature" that the agreement of October 21, 1950 settling such claims was without adequate consideration. Petitioner's son-in-law filed two separate complaints on behalf of petitioner's daughter which charged petitioner and her co-trustees with serious breaches of fiduciary duty and mismanagement of trust property. The complaints requested, as relief, the removal of petitioner as trustee of the trusts for the benefit of Eleanor, the appointment of the son-in-law as trustee, and the transfer of the shares purchased by petitioner *93 from her late husband's estate to her children in proportion to the property held by them under the testamentary trust. Petitioner's testimony indicates that she strongly opposed the substitution of her son-in-law as trustee of her daughter's property and that she considered the 900 shares of stock which she purchased from her husband's estate as her own. However, she considered her own security to be closely tied to the continued prosperity of the Lampert Lumber Company and the threat by her brother-in-law to eliminate her stock holdings in a reorganization if she did not agree to a settlement influenced her to acquiesce in her son-in-law's demands. It may be true, as respondent contends, that she might have successfully defended the actions, but the evidence of record convinces us that her son-in-law was determined to continue the time-consuming and expensive litigation against petitioner. To this end, he resisted attempts by the executors to obtain approval of accounts, appealed adverse rulings thereon to the Supreme Court of Minnesota, and successfully frustrated a move by the trustees to attain the appointment of a general guardian for petitioner's daughter who became incompetent *94 during the period of family strife. Furthermore, petitioner's three sons threatened similar litigation if they did not receive treatment equal to whatever redress the daughter gained from petitioner, and one son furnished information to petitioner's son-in-law for use in the actions against her. In order to avoid the prospect of a procession of harassing and costly claims and the separation of her stock interests from the Company if she resisted the compromise agreement, petitioner made the transfer in question for a dismissal of the lawsuits and threatened claims against her. Accordingly we hold, under the facts and circumstances herein, that the transfers of stock made by petitioner pursuant to the agreement of October 21, 1950, were not gifts but were transfers made for full and adequate consideration in money or money's worth within the meaning of section 1002 of the Internal Revenue Code of 1939. Catherine S. Beveridge, supra.Stella S. Housman, 38 B.T.A. 1007, affd. 105 Fed. (2d) 973, certiorari denied 309 U.S. 656, relied upon by respondent, is clearly distinguishable on its facts. Decision will be entered under Rule *95 50. Footnotes
1. SEC. 1002. TRANSFER FOR LESS THAN ADEQUATE AND FULL CONSIDERATION. Where property is transferred for less than an adequate and full consideration in money or money's worth, then the amount by which the value of the property exceeded the value of the consideration shall, for the purpose of the tax imposed by this chapter, be deemed a gift, and shall be included in computing the amount of gifts made during the calendar year.↩