Stanley N. GLICK (Plaintiff), Respondent,

v.

Judith GLICK (Defendant), Appellant.

No. 30291.

St. Louis Court of Appeals.

Missouri.

June 21, 1960.

Moss H. Silverforb, Kansas City, David L. Colson, Farmington, for appellant.

Roberts & Roberts, J. Richard Roberts, Farmington, for respondent.

WOLFE, Presiding Judge.

In an action for divorce now pending in the Circuit Court the defendant filed a cross-petition for separate maintenance and a motion for alimony pendente lite, suit money and attorneys' fees. There was a hearing on the motion, and the motion was sustained. The defendant movant then appealed on the ground that the allowances made were inadequate.

The parties were married in 1953, and at the time of their marriage Glick was attending the Kansas City College of Osteopathy. They lived in Kansas City, and Mrs. Glick worked as a stenographer for a few months but quit when she became pregnant. In 1956 the parties separated, and there was an action for divorce, but this was followed by a reconciliation. In 1957 Glick graduated and the parties moved to Farmington in St. Francois County, and Dr. Glick became an intern at the Mineral Area Osteopathic Hospital. He interned in the hospital for one year, and the parties, with their small son born of the marriage, lived together during that time. In June of 1958 Dr. Glick had completed his year as an intern and had decided to open a clinic and enter the practice in Ste. Genevieve with a Dr. Martz. On July 15, 1958 the parties again separated, and the present action followed.

The motion for temporary alimony, child support, suit money and attorneys' fees contained the allegations that the defendant was without funds to defend the action or prosecute her cross-petition, and that the plaintiff had a large practice in Ste. Genevieve and Bloomsdale, Missouri, which netted him a large income, and that he was the owner of personal and real property.

Mrs. Glick testified that prior to their marriage Glick had told her that he owned

some real estate in Malden, Missouri, and that he received $500 a month from the property. She said that he told her that this sum was paid to his father, who lived in Malden, and that his father sent him $250 a month and set aside the rest of it for the establishment of a clinic. She also testified that Glick told her that he had $10,000 in bonds and that his grandmother, his mother, and an aunt had left him money. She stated that on one visit to Malden the property was pointed out to her. When asked to describe the property upon cross-examination, she did not know whether it was in the City of Malden or outside of it, and she did not know if there was a building upon it or if it was unimproved real estate.

She testified that the plaintiff told her that he was going to open a clinic and that he would earn $20,000 a year from it. She said that he also told her that he had an offer of $1,200 a month from the Mineral Area Osteopathic Hospital, and that they wanted him to work there as a full-time doctor.

She stated that while they lived in Kansas City and Glick was attending school, their income consisted of $250 a month sent to Glick by his father and $19 a month that Glick received as a pension for some partial disability sustained during his service with the Armed Forces.

Mrs. Glick also testified as to her estimate of the amount that she would need for the child and for herself. She listed various items of estimated expenses, such as food, rent, laundry, medical care, amusement, etc., and she gave as a total for the support of the child the sum of $120 per month. She also estimated from a similar list of items that her own living costs amounted to $350 per month.

Dr. Glick testified that he owned no real estate or bonds, and that he had never received any inheritance from any one. He denied that he told his wife that he owned bonds and real estate, and denied that he pointed out any real estate in Malden which he claimed to own. He said that while he was in school his father supported him and his wife by sending him a check for $250 a month, and that he also received a pension of $19 a month. After he graduated, his father stopped sending him the $250, and the parties lived on what he earned as an intern and got as a pension.

Glick had been in school with Reed E. Martz, and they had talked of starting a clinic in Ste. Genevieve. When he completed his internship they went into partnership. Each of them put in $150. Dr. Glick said that he had to borrow this amount and that the original deposit for the partnership venture was $300. This was verified by a witness from the bank where Glick and Martz had their account. Their equipment was scanty and consisted chiefly of the instruments that they both owned, a sterilizing device, and an old X-ray machine that cost about $63.75 and about $500 worth of drugs.

From June 15, 1958 to August 31, 1958, which was the period covered by the testimony, the partnership had gross receipts of $2,590.10 and cash expenditures of $1,121.90. Of the receipts $950 was for taking care of the practice of two doctors who were on vacation, and consequently this sum would not be a recurring receipt. As of September 1, they had $800 in the bank and owed bills totaling $1,917.23. One thousand dollars of the bills owed was for a staff fee due the hospital, and it would not be a recurring expense. Dr. Glick had drawn as salary up to September 1, a total sum of $445.

Dr. Glick testified that as of the date of the hearing he had about $75 cash and a 1953 Buick automobile that had been given him by his father while he was in school. This, he thought, was worth $300 or $400. He also had medical equipment worth about $60 or $70, a microscope worth $50 or $75, and a medical library worth about $150. These items plus his clothing and a wrist watch which he valued at a total of about $150, constituted his entire possessions, excluding his half interest in·

the clinic. He said that he owed $162 on a loan that the bank had made to him, and that he had other personal debts totaling $250 or $300.

There was evidence that the two doctors had an office in Bloomsdale, but they rented it furnished and had no medical equipment in it except a folding table. Most of the evidence relating to the finances of the clinic was contained in the testimony given by Mrs. Martz, the wife of Dr. Martz. She worked at the clinic and kept the books, for which she received $20 a week.

The Superintendent of the Mineral Area Osteopathic Hospital testified that so far as he knew, no offer of employment had ever been made to Dr. Glick other than that as an intern. He said that the hospital only employed technicians on a permanent basis.

Louis Glick, the father of Dr. Glick, testified that his son owned no property and never had owned any property or inherited any money. He said that to further his son's education, he gave him $250 a month until he graduated. He also gave him the Buick automobile mentioned. He said that his son's name might be on some undescribed investments worth about $500 or $600.

Mr. Silverforb, attorney for the defendant, testified that he had put in 88½ hours of time on the case, and that his services were worth $25 an hour. His associate, Mr. Medley, had put in 29 hours, exclusive of the time to hear the motion here in question. There was also evidence that counsel intended to deposition.

Upon the foregoing evidence the court ordered that the plaintiff pay the defendant the sum of $100 a month alimony and $75 per month child support; $250 "on account" attorneys' fees, and $100 suit money, pending the suit and until further orders of court.

■ The defendant maintains that the amount allowed her is inadequate and requests this court to increase all of the allow-ances made. In weighing the sufficiency of the evidence to sustain the order, we of course defer to the trial judge on the question of the credibility of the witnesses. He had the witnesses before him and was consequently aided in passing upon their veracity by considering their demeanor upon the witness stand, while all we have before us is a transcript of that which was said.

■■ The court apparently believed the evidence offered by the plaintiff regarding his financial position and earning capacity. The plaintiff's own testimony was so well corroborated in most respects by other witnesses that the court was fully justified in accepting his version of the family finances as true. From this it appears that for a year before the separation the parties had been living on a total income of $219 a month, and that in the period covered by the evidence after separation the plaintiff's income was about the same. An award, temporary in nature, of a total of $175 for the wife and child does not appear too small. This sum is for the support of two, and prior to the separation three were living on $219 a month. It should therefore not cause any great change in their standard of living. The payment of the amount awarded would only leave the plaintiff about $50 for his own needs, based upon his income at the time of the hearing, and his requirements must also be considered. When the trial court makes an award, temporary in nature and not extending beyond the final hearing of the case, we are extremely cautious about altering it, and we find no reason in the record before us for so doing. McCarthy v. McCarthy, Mo.App., 329 S.W. 2d 236; Kaye v. Kaye, Mo.App., 327 S.W. 2d 496; Boll v. Boll, Mo.App., 287 S.W. 834.

■ Passing to a consideration of the allowance for suit money, counsel for the defense testified that he intended to take a number of depositions. He estimated the cost of such depositions at a sum in excess of the amount later allowed as suit money. Such depositions may or may not be taken, but if they are taken and the costs exceed

the suit money allowed, there is nothing to prevent the defendant from requesting an additional sum. If the court then finds the expenses to be necessary, it could in its discretion allow more suit money. In view of all of the facts before us, we cannot hold that the amount allowed is inadequate.

■■ As for the attorneys' fees, it must be borne in mind that the $250 allowed was on account. It is doubtlessly small compensation for the effort and time put in by the defendant's attorneys, but it was not intended as compensation in full. In fixing the fee the court may have had in mind, and properly so, that the amount of time devoted to the case by the lawyers was but one element to be considered in arriving at a just award for attorneys' fees. Gross v. Gross, Mo.App., 319 S.W.2d 880; Supreme Court Rule 4.12, V.A.M.R.

Another element in fixing such an award is the husband's financial condition and his ability to pay. Simon v. Simon, Mo.Sup., 248 S.W.2d 560; Gross v. Gross, supra; Dagley v. Dagley, Mo.App., 270 S.W.2d 553; Schwent v. Schwent, Mo.App., 209 S.W.2d 546. Since the financial condition of the parties has been quite fully set out above, it need not here be restated. It is sufficient to say that the plaintiff apparently will have some difficulty in paying the amount awarded. We cannot say that the temporary award and allowances were in any respect erroneous.

The respondent filed a motion to dismiss the appeal on the ground that the appellant's brief was in violation of Supreme Court Rule 1.08 (now Rule 83.05, V.A.M.R.). We do not find the brief complained of sufficiently violative of the rule to warrant a dismissal, and the motion is consequently overruled.

For the reasons stated, the judgment is affirmed.

RUDDY, J., and JAMES D. CLEMENS, Special Judge, concur.