574 S.W.2d 481 (1978)
D--- L--- L---, Appellant,
v.
M--- O--- L---, Respondent.
No. KCD 29418.
Missouri Court of Appeals, Kansas City District.
November 27, 1978.
*482 Before SOMERVILLE, P. J., and DIXON and TURNAGE, JJ.
PER CURIAM.
This case involves an appeal in a dissolution of marriage proceeding wherein the husband (a lawyer) challenges the decree entered by the trial court with respect to the division of marital property and the amount awarded to the wife for maintenance and attorney fees, and collaterally urges some undenominated form of relief at the appellate level because of the trial court's failure to "censure" the wife's attorney for submitting an "ex parte argument" and charging "excessive attorney fees".
The wife responds to the attack on the decree on the merits, counters the charge of unethical conduct leveled at her attorney, and presses this court to award her $2,500.00 as damages pursuant to Rule 84.19 because of the husband's "prosecution" of a "frivolous appeal". Prior to submitting her brief, the wife moved to dismiss the appeal on the ground that the husband's brief failed to comply with Rule 84.04.
It is not impolitic to note that a plethora of diversified issues have been presented for disposition which do not go to the merits of this case. Those fitting this description will be addressed first since they virtually lend themselves to being summarily disposed of.
The wife's motion to dismiss the appeal for failure of the husband's brief to comply with Rule 84.04 is overruled. Although the wife's attack upon the husband's *483 brief in certain instances is somewhat specious, in other respects it points up instances of non-compliance with Rule 84.04 which render the husband's brief fundamentally deficient and not merely technically imperfect. However, this court yields to the tacit suggestion in Thummel v. King, 570 S.W.2d 679, 690 (Mo. banc 1978), that where there has been no opportunity for rebriefing appellate courts should be cautiously hesitant about dismissing an appeal because the appellant's brief fails to comply with Rule 84.04. As the wife's motion to dismiss the husband's appeal in the instant case for failure of his brief to comply with Rule 84.04 was "taken with the case", the same will be overruled.
After the presentation of evidence was completed the trial court took the case under advisement before rendering judgment. During this interim the wife's attorney delivered a letter to the court summarizing the issues and recapitulating the wife's trial suggestions as to the division of marital property. The husband admitted that a copy of said letter was personally delivered to his office on the same day. The husband dedicates an entire point on appeal to the proposition that the trial court erred (1) in not censuring the wife's attorney for submitting the letter above mentioned and (2) in not censuring the wife's attorney for charging an excessive attorney's fee. This court hesitates to dignify this point, even to the extent of momentarily addressing it, as it relates solely to matters which, if possessing any merit,[1] are cognizable before The Advisory Committee or the appropriate Circuit Bar Committee. The request for censure should not have been injected at the trial level and will not be entertained on appeal.
The wife seeks damages from the husband under Rule 84.19 for engaging in a "frivolous appeal". The Supreme Court of Missouri has defined a "frivolous appeal" as "one which presents no justiciable question and is so readily recognizable as devoid of merit on the face of the record that there is little prospect for success." Means v. Sears, Roebuck & Co., 550 S.W.2d 780, 789 (Mo. banc 1977). The Supreme Court further noted in Means, 550 S.W.2d at 789 that "[t]he remedy provided in Rule 84.19 is both drastic and unusual and should accordingly be reserved for those rare and unusual situations where its application is warranted." The husband has raised two points on appeal which go to the merits of the decree entered by the trial court. In view of the ultimate disposition of this case on appeal, infra, it cannot be said that the husband's appeal was "devoid of merit on the face of the record". Accordingly, the wife's prayer for damages pursuant to Rule 84.19 on the grounds of a frivolous appeal is denied.
A summarization of the grounds upon which the husband attacks the decree entered by the trial court will precede a synopsis of the facts. First, the husband claims the trial court abused its discretion by favoring the wife with an unconscionable disproportionate share of the marital property. Second, the husband claims the trial court abused its discretion by the size of the amounts awarded to the wife for maintenance and attorney fees.
A recapitulation of the evidence in this case reveals the following: The parties were married on July 27, 1952, and separated in April, 1974. Two children were adopted by the husband and wife during the course of the marriage, namely, B____, a son, born November 22, 1965, and L____, a daughter, born March 29, 1969. The husband graduated from law school in 1957 with honors (Order of the Coif) and then entered the practice of law in Kansas City, Missouri, first with a firm, and for the last seven years in his own office. The wife *484 worked regularly outside the home during the first thirteen years of the marriage, including the period when the husband was attending law school. Although the wife quit working outside the home after the first child was adopted, she resumed doing so approximately one year before this case was tried. The wife was an "economical person" and contributed to a joint savings account owned by the parties which provided the down payment for the family home, the major item of marital property. The wife continued to work and contribute to the joint savings account after the family home was purchased. Part of their joint savings "was spent for a new car and some for living expenses and establishing a new business when . . . [the husband] left his previous law firm."
The wife estimated that the husband drank a quart of hard liquor "every couple of days" and he conceded that he drank "as much as two quarts of hard liquor a week". The husband became romantically involved with another woman in 1971. He lived with her on sporadic occasions between 1971 and 1974. The husband openly admitted that since April of 1974, the date he and his wife separated, he and the other woman have lived together at the same address in Kansas City, Missouri. The "other woman" also serves as his legal secretary. It is not surprising that both parties stipulated that the marriage was irretrievably broken.
The husband's "net income"[2] from his law practice averaged $1,250.00 per month in 1975 and $885.00 per month for the first ten months of 1976. During the early part of 1976 the wife resumed employment outside the home and at the time of the trial her "take home pay" after all deductions amounted to $489.92 per month. The wife estimated that the total monthly living expenses (including a monthly mortgage payment on the family home in the amount of $164.81) for herself and the two minor children to be $1,108.31. The husband estimated his total monthly living expenses to be $676.68.
In its final decree the trial court awarded custody of the two minor children to the wife, awarded her $1,500.00 for attorney fees, ordered the husband to pay her $300.00 per month for child support and $150.00 per month for maintenance, and divided the marital property as follows:

 WIFE HUSBAND
 Family homefair market value Undivided interest in undevel
 of equity .................. $29,300.00 oped real estate encumbered by
 deed of trustfair market value
 of equity........................ $ .00
 Personal apparel, furniture and Personal apparel, furniture and
 appliances .................... 4,200.00 appliances ...................... 3,000.00
 1971 Dodge Polara ............. 1,200.00 1968 Pontiac..................... 300.00
 1963 Studebaker.................. 100.00
 1941 Chevrolet................... 500.00
 Cash surrender value of three
 life insurance policies.......... 2,700.00
 Stocksfair market value......... 2,100.00
 Office furniture ................ 800.00
 Accounts receivable ............. 5,000.00
 Keogh Plan ...................... 9,000.00

Based on the above values the wife's share of the marital property totaled $34,700.00 and the husband's share of the marital property totaled $23,500.00. On the basis of these figures the wife was awarded approximately 60% of the marital property and the husband approximately 40%. However, the husband contends these figures do *485 not tell the whole story, because, as a practical matter, the value of the marital property he received was substantially reduced by certain indebtedness he was ordered to pay. Unfortunately the identity and amounts of the various items of indebtedness which the husband ostensibly refers to are, with no apparent rhyme or reason, diffused throughout a 572 page transcript. After laboriously screening the record, it appears that the indebtedness to which the husband refers totals approximately $12,633.60. According to the husband one of the items comprising the total indebtedness secretarial services in the amount of $1,200.00was owed to the other woman with whom he was living. With respect to another of the itemsdelinquent credit card accounts in the amount of $2,802.59 the husband testified that the other woman with whom he was living had permission to use his credit cards during the twelve or fifteen month period preceding the trial (no effort was made to separately identify the various charges), that trips which the other woman accompanied him on were charged on various credit cards, and a pattern of charging liquor on various credit cards by the husband was established by the record. The irony of taking the amounts owed for secretarial services and delinquent credit card accounts into consideration when determining a "just" division of marital property is too plain for words. The exclusion of these items from the total indebtedness of $12,633.60 leaves a balance of $8,631.01.
The total value of marital property awarded to the husband, $23,500.00, less $8,631.01 in indebtedness which the husband was ordered to pay, leaves a balance of $14,868.99, which in a broad sense may be referred to as the net value of the marital property awarded to the husband. In addition to receiving the family home subject to a deed of trust securing payment of a promissory note with a remaining balance of $10,700.00, the final decree ordered the wife to pay and discharge certain additional indebtedness totaling $4,325.00. The total value of marital property awarded to the wife, $34,700.00, less $4,325.00 in indebtedness which the wife was ordered to pay, leaves a balance of $30,375.00 which likewise may be referred to as the net value of the marital property awarded to the wife. On the basis of these recomputed figures the wife was awarded approximately 67% of the marital property and the husband was awarded approximately 33%.
A 67%-33% division of marital property will be used in considering whether the division of marital property was so unconscionably disproportionate as to constitute an abuse of judicial discretion. The linch-pin for review of this matter is Section 452.330.1, RSMo Supp.1975, which provides that the trial court "shall divide the marital property in such proportions as the court deems just after considering all relevant factors including: (1) The contribution of each spouse to the acquisition of the marital property, including the contribution of a spouse as homemaker; (2) The value of the property set apart to each spouse; (3) The economic circumstances of each spouse at the time the division of property is to become effective, including the desirability of awarding the family home or the right to live therein for reasonable periods to the spouse having custody of any children; and (4) The conduct of the parties during the marriage."
The genesis of Section 452.330, supra, is § 307 of the Uniform Marriage and Divorce Act as approved in 1970 by the National Conference of Commissioners on Uniform State Laws. 9 Uniform Law Ann. 455, 490 (1973). However, one substantial difference exists between Section 452.330, supra, and § 307 of the Uniform Act. The Uniform Act specifically directs that marital property shall be divided "without regard to marital misconduct", whereas Section 452.330.1(4), supra specifically prescribes the "conduct of the parties during the marriage" as one of four "relevant" factors for consideration when dividing marital property. Thus, consideration of the "conduct of the parties during the marriage" in arriving at a "just" division of marital property is unique to Missouri's Dissolution of Marriage Act and its inclusion necessarily bespeaks of a legislative command *486 that spousal misconduct, when shown to exist in a given case, be viably considered in arriving at a "just" division of marital property. Although it is inconceivable that the legislature intended that any one of the four guidelines spelled out in Section 452.330, supra, be emphasized to the exclusion of all others, it is likewise inconceivable that the legislature intended for the "conduct of the parties during the marriage", or, for that matter, any of the other guidelines, to be minimized out of existence. It should also be borne in mind that "conduct of the parties during the marriage" is not limited to financial misdeeds or economic derelictions, Conrad v. Bowers, 533 S.W.2d 614, 620 (Mo.App.1975), and no positive command of parity in the division of marital property is to be found in Section 452.330, supra, In re Marriage of Vanet, 544 S.W.2d 236, 240 (Mo.App.1976). The positive command of Section 452.330, supra, is a "just" division of marital property as measured by the four guidelines laid down therein and all other "relevant factors". The legislature, at least in theory, obviously intended that a just division of marital property should take precedence over an equal division of marital property. The case law of this state construing Section 452.330, supra, certainly concludes such to have been the intent of the legislature. Arp v. Arp, 572 S.W.2d 232, (Mo.App.1978); Fehr v. Fehr, 573 S.W.2d 695 (1978); Marriage of Badalamenti, 566 S.W.2d 229 (Mo.App. 1978); Seiner v. Seiner, 552 S.W.2d 54 (Mo. App.1977); Smith v. Smith, 552 S.W.2d 321 (Mo.App.1977); and In re Marriage of Vanet, supra.
The wife's contribution to the acquisition of the marital property in this case was more than that of a homemaker. She was the principal "breadwinner" while the husband obtained his legal education and she made substantial contributions to the savings account which enabled the parties to buy the family home, same constituting the single most valuable item of marital property. Any disparity in value between the respective shares of marital property loses some of its initial shock when the realization sets in that the marital property awarded the wife, namely, the family home, a 1971 automobile, and certain furniture and appliances, are necessary ingredients for even the most Spartan lifestyle in contemporary society. The "desirability" of awarding the family home to the wife as the spouse having custody of the two minor children of the marriage speaks for itself.
Morality aside, emotionally and financially the marriage could not afford the husband's drinking habits and extramarital affair. Notwithstanding the husband's cavalier attitude toward his extramarital affair, the trial court was not content to view it as little more than a socially frowned upon peccadillo. The trial court obviously concluded that the husband's longstanding penchant for hard liquor and infidelity had placed an unfair share of the marital load on the wife and, when equated with the prevailing concept of marriage as a partnership, entitled the wife to a greater share of the partnership assets, i. e., the marital property. When the guidelines set forth in Section 452.330, supra, are checked off against the facts of this case, one by one as well as collectively, they dramatically speak of a "just" division of marital property as opposed to an "unjust" or disproportionate division and completely refute the husband's contention that the division of marital property was a classic abuse of judicial discretion.
The gist of the argument advanced by the husband in opposition to the sum of $150.00. per month awarded to the wife for maintenance and the sum of $1,500.00 awarded to the wife for attorney fees appears to be that each exceeded his ability to pay after taking into consideration his own needs and requirements. Ability to pay is statutorily recognized as a relevant factor to be taken into consideration when determining the amount to be awarded for maintenance. Section 452.335.2(6), RSMo Supp. 1975; Brueggemann v. Brueggemann, 551 S.W.2d 853, 859 (Mo.App. banc 1977); and Brown v. Brown, 537 S.W.2d 434, 437 (Mo. App.1976). To the husband's credit, he did not question the $300.00 per month awarded *487 to the wife for child support. Bearing in mind that the wife estimated the monthly living expenses for herself and the two children to be $1,108.31, the wife's net monthly earnings $489.92, the monthly amount of child support which she was awarded, $300.00, and the monthly amount of maintenance which she was awarded, $150.00, total $939.92. On the basis of these figures it is a foregone mathematical certainty that the amount of money available to her each month will fall $168.39 short of meeting her estimated monthly expenses. On the basis of the only figures available, the husband's net monthly income, while averaging $1,250.00 in 1975, had dropped to $885.00 per month during the first ten months of 1976 (the latest figures disclosed by the transcript). Although the husband estimated his monthly living expenses to be $676.68, he deflated his own estimate by admitting on cross-examination that it included $150.00 per month for rent when, in fact, his living arrangement since April of 1974 was rent free. After deducting the $150.00 allocated to rent, his estimated monthly living expenses total $526.68. This readjusted estimate of the husband's monthly living expenses, $526.68, the amount of child support awarded monthly to the wife, $300.00, and the amount of maintenance awarded monthly to the wife, $150.00, total $976.68. On the basis of presently available figures, absent consideration of any amount for debt retirement, it is a foregone mathematical certainty that the husband will fall approximately $92.00 short each month of meeting his personal living expenses and the child support and maintenance payments awarded to the wife. In addition, the husband has been ordered to pay the wife $1,500.00 for attorney fees. Ability of the husband to pay has heretofore been recognized as being among the relevant factors to be considered when called upon to determine whether the husband should be obligated to discharge part or all of the attorney fee incurred by the wife when a marital rift occurs. Glick v. Glick, 336 S.W.2d 528, 532 (Mo.App. 1960).
This case vividly demonstrates the frequently recurring tragedy of a husband and wife who emotionally can't afford to be married and who financially can't afford to have their marriage dissolved. The ravage of inflationnot enough money to go aroundmakes it extremely difficult to resolve the husband's second point. Even Solomon in all his wisdom would be solely tested in doing so. Whatever is done, it is clear that somehow both parties are going to have to pare their living expenses. As a matter of mathematics, certain hard realities exist which will not go away by simply ignoring them. After balancing the seemingly inexorable mathematical realities of this case with the evidence, the statutorily prescribed factors for determining a just amount to award the wife for maintenance, Section 452.335.2, RSMo Supp.1975, and the criteria for awarding attorney fees, this court concludes that the amount awarded to the wife for maintenance should be reduced from $150.00 per month to $75.00 per month but the amount awarded to her for payment of attorney fees, $1,500.00,[3] should stand. The uncontradicted evidence before the trial court as to the husband's monthly "net income" for the first ten months of 1976, the latest figures available, superimposed upon the "relevant" factor of the husband's ability to pay, accounts for a "firm belief" by this court that the decree with respect to the amount awarded for maintenance was "against the weight of the evidence" and was wrong. Murphy v. Carron, 536 S.W.2d 30, 32 (Mo. banc 1976). Whether "changed circumstances" within the purview of Section 452.370, RSMo Supp. 1975, may hereafter exist so as to warrant a modification of the amount of monthly maintenance presently awarded necessarily awaits another day and another proceeding.
In conclusion, that portion of the original decree entered by the trial court in this cause on February 7, 1977, relating to maintenance is set aside with directions that the *488 trial court enter judgment ordering the husband to pay $75.00 per month to the wife for maintenance; in all other respects the original decree entered February 7, 1977, is affirmed.
Cause remanded to the trial court with directions to enter a new decree consistent with this opinion.
All concur.
NOTES
[1] For obvious reasons, this court expressly refrains from delving into or deciding the charges leveled against the wife's attorney. This court, in passing, merely observes (1) that Rule 4-DR 7-110(B) suggests that manual delivery of a copy of the letter to the husband's office the same day it was delivered to the court exonerated the wife's attorney of any unethical conduct with respect to said letter; and (2) the attorney fee complained of was one agreed upon between the wife and her attorney, was paid by the wife, and exceeded the amount of attorney fees awarded to the wife by the trial court.
[2] The term "net income" is apparently used by the parties in the context of the net amount remaining after the deduction of all taxes and business and professional expenses.
[3] The wife borrowed money and paid her attorney $4,000.00. Consequently the amount awarded her by the trial court fell considerably short of reimbursing her for the amount of attorney fees she actually incurred.