Beverly FIELDS, Plaintiff-Respondent,

v.

Wendell FIELDS, Defendant-Appellant.

No. WD 33004.

Missouri Court of Appeals,
Western District.

Oct. 19, 1982.

As Modified Nov. 30, 1982.

L.E. Atherton, Milan, for defendant-appellant.

R. Max Humphreys, Miller, Humphreys & Seidel, Trenton, for plaintiff-respondent.

Before SOMERVILLE, C.J., WASSER-STROM, J., and MOORE, Senior Judge.

SOMERVILLE, Chief Judge.

This dissolution of marriage case is here for appellate review a second time. On its maiden appeal the judgment of the trial court was affirmed insofar as it decreed dissolution of the marriage and awarded custody of the three minor children born of

the marriage to the husband, but remanded for further proceedings by reason of its failure to properly identify, allocate and assign values to marital and nonmarital property. *Fields v. Fields,* 584 S.W.2d 163 (Mo.App.1979). Upon remand, a new judgment was entered by the trial court on July 30, 1981, and the present appeal followed.

■ Once again the husband assumes the role of appellant. On this appeal he raises five points, all of which, in varying degree, relate to the trial court's allocation and valuation of marital and nonmarital property. Appellant's original brief herein was stricken for noncompliance with Rule 84.-04(d) in light of *Thummel v. King,* 570 S.W.2d 679 (Mo. banc 1978), with leave given appellant to file an amended brief. Of the five points, supra, raised in appellant's amended brief, three are devoid of any "citations of authorities". The points falling in this category question the values placed on two items of personal property constituting marital property and the qualifications of a witness who testified as to the value of certain marital and nonmarital real property. With respect to the three points mentioned, appellant offers no explanation for his failure to buttress them with "citations of authorities" as required by Rule 84.04(d). A careful examination of the points convincingly demonstrates that appellant's failure to cite authorities cannot be justified under any of the excusable grounds set forth in *Thummel v. King, supra,* at 687: "Thus, if the point advanced is not a matter of first impression and is not simply a matter of logic or policy or analysis of statutory or documentary language, as would be the case in the type of matters indicated above, the court on appeal need not search for precedential support to overrule the contention. If the point is one for which precedent is appropriate and available, it is the obligation of appellant to cite it if he expects to prevail. We suggest that if the point is one for which it is believed that precedent for or against it is unavailable, counsel would be well advised to specifically so state under the point in question, explaining why citations are unavailable." Due to the ever increasing number of appeals, the exigencies of time no longer permit courts of appeal to search for precedential support for points which counsel has inexcusably failed to provide. Accordingly, the three points in question present nothing for appellate review.

The two remaining points relied upon by appellant, although unduly verbose, may fairly be paraphrased as follows: (1) the trial court erred in treating two certificates of deposit standing in appellant's name alone as marital rather than nonmarital property because they were respectively purchased by appellant with money bequeathed to him by a deceased son by a former marriage and from proceeds of a life insurance policy on his deceased son's life naming appellant as beneficiary; and (2) the trial court abused its discretion in dividing the marital property because the division effected failed to reflect consideration of the wife's marital misconduct as a relevant factor. As will later become apparent, resolution of these two points will have an inexorable ripple effect upon the overall division of marital property made by the trial court.

Two certificates of deposit standing in the husband's name alone, one in the amount of $5,000 issued by the Chillicothe State Bank, Chillicothe, Missouri, and one in the amount of $5,000 issued by the Kingston Bank, Kingston, Missouri, were included in and awarded to the husband in the division of marital property. The husband testified the source of the funds used to acquire the Chillicothe State Bank certificate of deposit "was my son's [a son by a former marriage] estate—pertaining to his death" and the source of the funds used to acquire the Kingston Bank certificate of deposit was from his deceased son's "insurance check". No evidence was offered by the wife to refute or contradict the husband's testimony in these respects.

■ The Chillicothe State Bank certificate of deposit will be dealt with first. Section 452.330.1, RSMo 1978, insofar as here pertinent, provides that "the court *shall set apart to each spouse his property*".

(Emphasis added.) Section 452.330.2(1)(2), RSMo 1978, provides that "[f]or purposes of sections 452.300 to 452.415 only, 'marital property' means all property acquired by either spouse subsequent to the marriage except: (1) Property acquired by gift, bequest, devise or descent; (2) Property acquired in exchange for property acquired prior to the marriage or in *exchange for property acquired by gift, bequest, devise or descent*". (Emphasis added.) Although the husband's testimony was lacking in specificity, i.e., whether the funds used to acquire the Chillicothe State Bank certificate of deposit were derived from his "son's estate" by way of "bequest" or "descent", the only reasonable inference deducible from the record is that the source funds came from the husband's "son's estate" either by way of "bequest" or "descent". Whether the source funds used to acquire the Chillicothe State Bank certificate of deposit were derived from the husband's "son's estate" prior or subsequent to the present marriage, in and of itself, is not fatal to the husband's contention that the Chillicothe State Bank certificate of deposit was separate property. Section 452.330.2(2), RSMo 1978, specifically excepts as marital property that which is acquired "in exchange for property acquired prior to the marriage or in exchange for property acquired by gift, bequest, devise or descent."

■ A more vexing problem is presented by Section 452.330.3, RSMo 1978, which reads: "All property acquired by either spouse subsequent to the marriage and prior to decree of dissolution is presumed to be marital property regardless of whether title is held individually or by the spouses in some form of coownership such as joint tenancy, tenancy in common, tenancy by the entirety, and community property. The presumption of marital property is overcome by a showing that the property was acquired by a method listed in subsection 2." The husband, assuming the source funds of the Chillicothe State Bank certificate of deposit were acquired ·by the husband subsequent to the marriage, had the burden of proving that the Chillicothe State Bank certificate of deposit "was acquired

by a method listed in subsection 2" of Section 452.330, RSMo 1978. *Hull v. Hull,* 591 S.W.2d 376, 379 (Mo.App.1979); and *Boyers v. Boyers,* 565 S.W.2d 658, 660 (Mo.App. 1978).

In light of the legal template cast above, ultimate determination of whether the Chillicothe State Bank certificate of deposit constituted the husband's separate property turns on whether the husband sustained the burden of proving that the funds used to acquire the certificate of deposit in question were derived by "bequest" or "descent" from his "son's estate". By way of recapitulation, the only evidence touching upon the matter comes from the husband who testified that the source of funds used to acquire the Chillicothe State Bank certificate of deposit "was my son's estate—pertaining to his death". The only reasonable inference deducible therefrom is that the source funds came from his "son's estate" either by way of "bequest" or "descent". The wife offered no evidence to refute or contradict the husband's testimony or the reasonable inference to be drawn therefrom, made no effort to impeach the husband's testimony or attack his credibility as a witness, and neither offered evidence nor claimed that any funds derived by the husband from his "son's estate" became so commingled with marital property or funds prior to acquisition of the Chillicothe State Bank certificate of deposit that the latter lost its identity as nonmarital property. Regarding potential consequences of commingling marital and nonmarital funds, see *Anderson v. Anderson,* 584 S.W.2d 613, 615 (Mo.App.1979), and *Marriage of Badalamenti,* 566 S.W.2d 229, 235 (Mo.App.1978).

■ On the basis of the entire record this court concludes that the husband carried his burden of proving that the Chillicothe State Bank certificate of deposit was obtained in exchange for funds acquired by him from his deceased "son's estate" by "bequest" or "descent", and, therefore, constituted nonmarital property. Inclusion of the Chillicothe State Bank certificate of deposit as an item of marital property was against all

the evidence, much less the greater weight of the evidence, and an erroneous application of law. Consequently, it is subject to redress on appeal notwithstanding the strictures of appellate review in court tried cases laid down in *Murphy v. Carron,* 536 S.W.2d 30 (Mo. banc 1976).

■ The statutory references, cited cases, and rationale heretofore set forth with respect to the Chillicothe State Bank certificate of deposit are, in many salient respects, applicable to the Kingston Bank certificate of deposit. The husband testified that its source was his deceased son's "insurance check". The husband also testified that his son by a former marriage was killed in 1969 while serving in the United States Marine Corps. Scant as the husband's testimony may be, the only reasonable inference deducible therefrom is that the source of funds for acquisition of the Kingston Bank certificate of deposit was insurance proceeds received by the husband by reason of his son's death while serving in the United States Marine Corps. In the same vein previously noted, the wife offered no evidence to refute or contradict the husband's testimony in the respects just mentioned or the reasonable inference to be drawn therefrom, made no effort to impeach his testimony or attack his credibility as a witness, and neither offered evidence nor claimed that funds used to purchase the Kingston Bank certificate of deposit came from a source other than proceeds received by the husband as beneficiary of an insurance policy on his son's life, or that funds derived from the proceeds of the insurance in question were so commingled with marital property or funds prior to acquisition of the Kingston Bank certificate of deposit that the latter lost its identity as nonmarital property.

Appellant has failed to cite, and this court's independent research has failed to disclose, any Missouri cases dealing with Section 452.330.2(1), RSMo 1978, in the context of whether proceeds received as beneficiary of a life insurance policy constitute separate property. This court's independent research, however, has disclosed a

Kentucky case, *Brunson v. Brunson,* 569 S.W.2d 173 (Ky.App.1978), directly in point. In *Brunson,* the Kentucky Court of Appeals in reliance upon KRS 403.190(2)(b), which is identical to Section 452.330.2(1), RSMo 1978, held that a savings account in a husband's name traceable to proceeds received by the husband as beneficiary of a life insurance policy was nonmarital property. Although the Kentucky Court of Appeals did not specify which of the four categories, "gift, bequest, devise or descent", proceeds of the life insurance policy fell, it is implicit that they treated the proceeds as falling within the statutory purview of a gift. By way of augmentation, as noted in *Gurnett v. Mutual Life Ins. Co.,* 356 Ill. 612, 191 N.E. 250, 253 (1934), "[t]he designation of a beneficiary in a policy of life insurance creates an inchoate gift of the proceeds of the policy, which if not revoked by the insured in his lifetime, rests in the beneficiary at the time of the former's death." As was held with respect to the Chillicothe State Bank certificate of deposit, inclusion of the Kingston Bank certificate of deposit as an item of marital property was against all the evidence and an erroneous application of law, and its susceptibility to correction on appeal is in no way inhibited by the scope of appellate review laid down in *Murphy v. Carron, supra.*

The remaining point to be dealt with on appeal plunges this court into the legal thicket of what constitutes a just division of marital property. Section 452.330, RSMo 1978, statutorily mandates that "the court ... shall divide the marital property in such proportions as the court deems just after considering all relevant factors including: (1) The contribution of each spouse to the acquisition of the marital property, including the contribution of a spouse as homemaker; (2) The value of the property set apart to each spouse; (3) The economic circumstances of each spouse at the time the division of property is to become effective, including the desirability of awarding the family home or the right to live therein for reasonable periods to the spouse having custody of any children; and (4) The conduct of the parties during the marriage."

Although the statutory mandate is lucidly stated, its application on a case to case basis has been a prolific source of appeal. The husband, as previously noted, seizes upon factor (4) and presses this court to reject the trial court's division of marital property because it failed to reflect consideration of the wife's marital infidelity as a relevant factor.

The Dissolution of Marriage Act's conceptual emphasis on marriage as a partnership is nowhere more pronounced or difficult to adjust to conventional values of morality than when faced with properly weighting marital misconduct for purposes of arriving at a just division of marital property. Marital misconduct per se should not be seized upon as the sole basis for awarding an inadequate share of marital property to an offending spouse. *Burtscher v. Burtscher,* 563 S.W.2d 526, 527 (Mo.App. 1978). It becomes a viable factor and entitled to appropriate weight however where the errant spouse's misconduct places extra burdens on the nonerrant spouse in the partnership endeavor. The rationale being if one spouse is compelled to contribute more to the partnership endeavor due to the other's misconduct, he or she is entitled to have the errant spouse's misconduct taken into consideration by the trial court in arriving at a just division of marital property. *D—— L—— L—— v. M—— O—— L——,* 574 S.W.2d 481, 486 (Mo.App.1978); and *Burtscher v. Burtscher, supra,* 563 S.W.2d, at 527–28.

Without going into unsavory details, the evidence in this case by the wife's own admission showed an insatiable penchant on her part to indulge in numerous extra-marital affairs, many of which caused her to be absent from the home for protracted periods of time. Even from the ostensibly more sophisticated view of marriage as a partnership in the wake of the Dissolution of Marriage Act, the wife's hedonistic conduct cannot be passed off as nothing more than socially frowned upon escapades. Each time they occurred, the husband, whose primary partnership responsibility involved running a sizeable farming operation, was burdened with the additional responsibility of caring for the welfare and day to day physical needs of the three minor children born of the marriage. Perforce, under the facts in this case the wife's misconduct was a viable factor to be properly weighted and considered in arriving at a just division of marital property.

Income to meet the needs of the marriage was generated by a farming operation revolving around 750 acres of land, 640 acres of which was valued at $416,000 and properly set apart to the husband as his separate property (acquired by the husband by devise prior to the marriage) and 110 acres acquired subsequent to the marriage valued at $71,500.00 and properly held to be marital property. The 640 acre tract of nonmarital property was subject to two deeds of trust securing payment of two promissory notes, thereby reducing its net value to $292,667.16. The 110 acre tract constituting marital property was subject to a deed of trust securing payment of a promissory note, thereby reducing its net value to $58,036.00. According to the judgment and decree rendered by the trial court on July 31, 1981, marital property consisted of the 110 acre tract, farm machinery, interest in a third party partnership, four motor vehicles, a promissory note, livestock, crops and stored grain, bank accounts (checking and saving), certificates of deposit (including the two in question on appeal), canine breeding stock, and a residential property in Chillicothe, Missouri, having a combined value of $351,520.49. During the course of the marriage secured and unsecured indebtedness was incurred with respect to the marital property of which $264,204.75 remained due and owing at the time the marital property to $87,315.74. The judgment and decree ordered the husband to pay the outstanding indebtedness ($264,-204.75) incurred with respect to the marital property and awarded him all marital property except the following which was awarded to the wife, to wit: canine breeding stock valued at $3,000.00; certificate of deposit in wife's name in the amount of $4,441.14; pickup truck valued at $1,500.00;

cash in the amount of $15,000.00 to be paid by the husband to the wife; and the residential property in Chillicothe, Missouri, valued at $14,000.00. The marital property awarded to the wife, all of which was free and clear of indebtedness, had a combined value of $37,941.14. The marital property awarded to the husband (including the two certificates of deposit in controversy) had a net value of $49,374.60. Transposed in terms of percentages rounded off to the nearest decimal, the husband was awarded 57% and the wife 43% of the net value of all marital property.

Setting apart the Chillicothe State Bank certificate of deposit in the amount of $5,000.00 and the Kingston Bank certificate of deposit in the amount of $5,000.00 to the husband as his separate property ipso facto reduces the net value of the marital property from $87,315.74 to $77,315.74. A present division of marital property having a net value of $77,315.74 on the same percentage basis originally applied by the trial court results in a division of marital property to the wife with a net value of $33,245.77 and a division of marital property to the husband with a net value of $44,069.97. Doing so poses the further question of whether such a division of marital property constitutes a just division in light of all relevant factors including those specifically set forth in Section 452.330.1, RSMo 1978.

 No positive command of parity or mathematical precision regarding the division of marital property is to be found in Section 452.330, RSMo 1978. To the contrary, the legislature, at least in theory, obviously intended that a just division of marital property, arrived at by properly weighting and balancing the four statutorily enunciated factors and all other "relevant factors", should take precedence over a division arrived at by a stylized formula. In this case the wife's misconduct was but one factor to be weighted and balanced in arriving at a just division of marital property. The husband intractably emphasizes the wife's marital misconduct to the exclusion of all other relevant factors. It is inconceivable that the legislature intended

that any one of the four relevant factors spelled out in Section 452.330.1, RSMo 1978, should be emphasized to the exclusion of all others or that any one or more remaining factors should be minimized out of existence. Other relevant factors have surfaced on the record in this case which must be considered in determining whether a division of marital property resulting in an award of 57% to the husband and 43% to the wife is just. Section 452.330.1(1), RSMo 1978, specifically spells out "[t]he contribution of each spouse to the acquisition of the marital property, including the contribution of a spouse as homemaker" as a relevant factor to be considered in the division of marital property. The record discloses that the wife, in addition to routine housekeeping duties, e.g., cooking, cleaning, and doing laundry, performed a man's work in the fields and cared for livestock in furtherance of the farming operation which was the basic source of the marital property accumulated during the marriage. Moreover, at this juncture it is appropriate to reiterate that the trial court set apart to the husband as nonmarital property 640 acres of farm land having a net value of $292,667.16. In addition, as a result of this appeal, two certificates of deposit totalling $10,000.00 will be set apart to him as nonmarital property. On the other hand, the wife had no separate property and, accordingly, none was set apart to her. Section 452.330.1(2), RSMo 1978, with like specificity, makes "[t]he value of the property set apart to each spouse" a relevant factor to be considered in arriving at a just division of marital property. See also: *Cain v. Cain*, 536 S.W.2d 866 (Mo.App.1976); and *Fields v. Fields, supra*. The weight to be given the wife's admitted misconduct, the respective spousal contributions to acquisition of the marital property, the value of the nonmarital property set apart to the husband, and the balancing thereof in arriving at a just division of marital property, was peculiarly within the province of the trial court and should not be disturbed on appeal unless it can be said that the percentage shares awarded the respective spouses was against the weight of the evidence or re-

sulted from an erroneous application of the law. *Murphy v. Carron, supra.* It is obvious from the record that the trial court concluded that a 57% allocation of marital property to the husband and 43% to the wife constituted a just division of marital property after considering all relevant factors including the wife's misconduct. Transposition of these percentages to the net value of the marital property after exclusion of the two controversial certificates of deposit will, as heretofore demonstrated, result in a division of marital property to the husband in the net amount of $44,069.97 and to the wife in the net amount of $33,-245.77. Such a division is neither unjust nor suceptible to a charge that all relevant factors spelled out in Section 453.330.1, RSMo 1978, including the wife's marital misconduct, were not properly weighted, balanced, and considered. The simplest and most convenient way to adjust the division of marital property to bring it in conformity with this opinion is to reduce the amount of cash to be paid by the husband to the wife from $15,000.00 to $10,304.63.

By way of final disposition that part of the decree declaring the Chillicothe State Bank certificate of deposit in the amount of $5,000.00 and the Kingston Bank certificate of deposit in the amount of $5,000.00 as marital property is reversed and the case is remanded with directions to amend said decree by setting the two certificates of deposit apart to the husband as his separate property. Furthermore, that part of the decree dividing marital property wherein the wife was awarded $15,000.00 in cash to be paid to her by the husband is reversed and the cause is remanded with instructions to amend said decree by awarding the wife $10,304.63 in cash to be paid to her by the husband. In all other respects the decree entered on July 30, 1981, is affirmed.

Affirmed in part, reversed in part, and remanded with directions.

All concur.